**JONES DAIRY FARM,**
**Plaintiff-Appellee,**

v.

**LOCAL NO. P–1236, UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, AFL–CIO, Defendant-Appellant.**

**No. 84–1301.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 8, 1984.

Decided April 24, 1985.

---

Kenneth R. Loebel, Habush, Habush & Davis, S.C., Milwaukee, Wis., for plaintiff-appellee.

Herbert P. Wiedemann, Foley & Lardner, Milwaukee, Wis., for defendant-appellant.

Before WOOD and POSNER, Circuit Judges, and DUMBAULD, Senior District Judge.*

POSNER, Circuit Judge.

The collective bargaining agreement between Jones Dairy Farm and a local of the food workers union contained the following clause: "With respect to the subcontracting of work, and the performance of work at this plant rather than elsewhere, each party retains its legal rights as in effect prior to the execution of this Agreement, and nothing in this Agreement shall be construed as adding to or subtracting from those rights." Jones Dairy Farm wanted to contract out some janitorial work currently being performed at the plant by employees represented by the union; and after giving the union notice and an opportunity to bargain over the question, Jones Dairy Farm went ahead and contracted out the work. The union filed a grievance. The arbitrator interpreted the collective bargaining agreement to forbid the company to contract out the work, and the company brought this suit under 29 U.S.C. § 185 to set aside the arbitration award. The district court set it aside, the union appealed, and in a split decision this panel affirmed the district court. 755 F.2d 583 (7th

---

* Hon. Edward Dumbauld of the Western District of Pennsylvania, sitting by designation.

Cir.1985). The company has petitioned for rehearing.

The arbitrator's decision in favor of the union was based on his interpretation of a decision by the National Labor Relations Board, *Milwaukee Spring Division,* 265 N.L.R.B. 206 (1982), which was repudiated by the Board on reconsideration. *Milwaukee Spring Division,* 268 N.L.R.B. 601 (1984). Our previous opinions revolved around the question whether and how grievously the arbitrator had erred in deciding a legal question (the parties' "legal rights ... in effect prior to the execution of this Agreement") and whether such error made the arbitrator's award unenforceable. We now think the appeal should be decided differently, and vacate our previous decision.

The company's basic argument is that the intention of the contracting-out clause was to give it a legal right to contract out any work now performed at the plant, and that the arbitrator had no authority to interpret the clause as giving the union a right to prevent contracting out. The arbitration clause of the collective bargaining agreement states that "the sole function of the arbitrator shall be to determine whether or not the rights of an employee, as set forth in this Agreement, have been violated by the Company. The arbitrator shall have no authority to add to, subtract from, or modify this Agreement in any way." This does appear to put beyond the arbitrator's power the determination of rights not conferred by the agreement itself. And the first *Milwaukee Spring* decision, on which the arbitrator relied, seems irrelevant. It was a case where the collective bargaining agreement said nothing about contracting out, so that the issue was the parties' rights when the agreement is silent—not, as in this case, when a clause in the agreement appears to make contracting out a prerogative of management.

■ But we do not understand therefore why the company consented to arbitrate this dispute. If it is right, there is no basis in the contracting-out clause, the arbitration clause, or anything else in the collec-

tive bargaining agreement for arbitrating this dispute. Cf. *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960). It is as if the union had said, we want the arbitrator to decide whether the president of Jones Dairy Farm should be allowed to use a nondairy creamer in his coffee.

■ The company could therefore have refused to arbitrate; and if the union had sued it, the court would have decided whether the company had to arbitrate this particular dispute—at least if the question could be answered without entangling the court in the merits of the dispute sought to be arbitrated. This qualification is taken very seriously in this circuit, see, e.g., *Communications Workers v. Western Elec. Co.,* 751 F.2d 203, 205–07 (7th Cir. 1984), and maybe would come into play here, as hinted in *Associated Milk Dealers, Inc. v. Milk Drivers Union, Local 753,* 422 F.2d 546, 552 (7th Cir.1970). It is desirable to put as much of the case as possible to the arbitrator, and not encourage parties to go to court before the arbitration can begin. But that is not an issue we need decide. If the question of arbitrability was itself arbitrable, all that would mean is that it would have to be presented to the arbitrator. It would still be an issue. But Jones Dairy Farm did not make it an issue. It did not, while agreeing to participate in the arbitration, challenge the arbitrator's jurisdiction, and make clear that it was preserving its challenge for eventual presentation to a court if the arbitrator ruled in the union's favor, as in *Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, Local 120,* 647 F.2d 372, 382 (3d Cir.1981). See Gorman, Basic Text on Labor Law 587 (1976). The company never questioned the arbitrator's authority.

■ If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it. *Fortune, Alsweet & Eldridge, Inc. v. Daniel,* 724 F.2d 1355, 1357 (9th Cir.1983) (per curiam); *Piggly Wiggly Operators' Warehouse, Inc. v.*

*Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1,* 611 F.2d 580, 584 (5th Cir.1980); *International Brotherhood of Teamsters, Local Union No. 117 v. Washington Employers, Inc.,* 557 F.2d 1345, 1349–50 (9th Cir.1977); *Ficek v. Southern Pacific Co.,* 338 F.2d 655, 656–57 (9th Cir.1964); *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.,* 274 F.2d 805, 809 (2d Cir.1960). It makes no difference whether it is an issue of law. *Broadway Cab Coop., Inc. v. Teamsters Local Union No. 281,* 710 F.2d 1379, 1382 (9th Cir.1983). By going forward with the arbitration without questioning the arbitrator's authority to resolve the dispute, Jones Dairy Farm consented to have him decide what "legal rights" in the contracting-out clause meant.

Collective bargaining agreements often incorporate legal terms which it then becomes the duty of the arbitrator to interpret, and courts treat those interpretations deferentially. See, e.g., *id.; Local Union 59, Int'l Brotherhood of Electrical Workers v. Green Corp.,* 725 F.2d 264, 268–69 (5th Cir.1984); *American Federation of Television & Radio Artists, Cleveland Local (AFTRA) v. Storer Broadcasting Co.,* 745 F.2d 392, 398–99 (6th Cir.1984). If people want a question of law resolved by an arbitrator rather than a judge, there is nothing to stop them. It would be odd if having consented to have the arbitrator decide what its legal rights to contract out work were, Jones Dairy Farm could then have the same question redetermined by two courts—the district court and this court. We hold it could not, and therefore that the judgment must be reversed with instructions to enforce the arbitrator's award. Of course, if the arbitrator, having been invited by the parties to determine what Jones Dairy Farms' legal rights were, disregarded the law, and based his decision on some private notion of equity, the courts could set aside the award. See *id.; San Martine Compania de Navegacion, S.A. v. Saguenay Terminals Ltd.,* 293 F.2d 796, 801–02 (9th Cir.1961). But the arbitrator in this case did not do any such thing; he applied what he thought was the law, as

given by the first *Milwaukee Spring* decision. Since Jones Dairy Farm, by submitting without a peep to the arbitrator's jurisdiction, admitted the competence of the arbitrator to determine its "legal rights," it cannot complain that the arbitrator exceeded his authority by determining them. Of course the arbitrator may have made a mistake in the course of exercising that authority; but we have found no case where an arbitrator's award was set aside just because he had made a legal error.

Some cases, it is true, such as *AFTRA, supra,* 745 F.2d at 398, leave open the question whether an error in deciding a pure question of law might not be grounds for setting aside the arbitrator's award. The arbitrator's comparative advantage is least (and the courts' greatest) when the arbitrator is addressing a pure question of law; and if parties cannot get judicial review of such questions, maybe they will be deterred from agreeing to arbitration. Against these points must be set the delay and the extra layers of review (since an arbitrator's decision is reviewable both by the district court asked to enforce or set aside his award and the court of appeals asked to vacate the district court's decision), not to mention the difficulty of distinguishing "pure" from "impure" questions of law, created by embracing the suggested distinction. But we need not weigh these considerations here, as the question of the company's preexisting legal rights was not a pure question of law, but involved or could have involved the terms of the collective bargaining contract, the parties' practices under it, the precise nature of the work sought to be contracted out, and the reasons for contracting it out. We also need not decide whether a reviewing court can correct a clear (as distinct from a pure) error of law made by an arbitrator. The company lays great stress on the fact that the Board has repudiated the *Milwaukee Spring* decision on which the arbitrator relied and that anyway that decision may have been inconsistent with our own previous decision in *University of Chicago v. NLRB,* 514 F.2d 942, 948–49 (7th Cir.1975).

But the arbitrator cannot be seriously faulted either for failing to predict the Board's change of heart or for refusing to be bound (as the Board itself refuses to be bound) by circuit precedent. He may well have erred; but we cannot say he committed so gross an error that it would warrant setting aside his award, assuming that the law of labor arbitration has a doctrine of gross error.

The district court should not have set aside the arbitrator's award, so we reverse, and remand with directions to enforce the award.

REVERSED.