**HARLEY–DAVIDSON MOTOR COMPANY, INC., Plaintiff,**

v.

**LOCAL 209, ALLIED INDUSTRIAL WORKERS OF AMERICA, AFL–CIO, and the International Union, Allied Industrial Workers of America, AFL–CIO, Defendants.**

No. 83–C–0305.

United States District Court, E.D. Wisconsin.

July 17, 1985.

George D. Cunningham, Foley & Lardner, Milwaukee, Wis., for plaintiff.

Kenneth R. Loebel, Habush, Habush & Davis, S.C., Milwaukee, Wis., for defendants.

**DECISION AND ORDER**

WARREN, District Judge.

On February 28, 1983, Plaintiff, Harley-Davidson Motor Company, Inc. ("The Company") brought an action pursuant to 29

U.S.C. § 185 (1976) seeking to vacate the arbitration award issued by Arbitrator Edward B. Krinsky on December 9, 1982. On April 14, 1985, Defendants, Local 209 and The International Union of the Allied Industrial Workers of America, AFL–CIO ("The Union"), moved the Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Company filed a cross-motion for summary judgment on May 16, 1985. Summary judgment may be ordered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In the present case, the Court finds that no genuine factual issues exist other than the determination of damages. For the following reasons, the Court awards summary judgment in favor of the Union and remands this case to the arbitrator to determine damages.

## I. BACKGROUND

The Company and Union were parties to a collective bargaining agreement ("The Agreement") effective July 1, 1980 through June 24, 1983. In November 1981, the Company decided to subcontract work performed by bargaining unit employees in its Parts and Accessories warehouse to non-bargaining unit employees. This decision resulted because previous attempts by the Company to modify the Agreement to reduce labor costs within the Parts and Accessories warehouse were refused by the Union. On December 23, 1981, pursuant to procedures embodied in Article X of the Agreement, the Union filed a grievance protesting this subcontracting decision. The instant case before the Court arose from this dispute.

Article X of the Agreement provides for resolving grievances through arbitration performed by an arbitrator mutually agreeable to both parties. The parties agreed to have Arbitrator Edward B. Krinksy resolve the grievance. The stipulated issue before the arbitrator was as follows:

Did the Company violate the labor contract by the actions it took relative to the performance of work in the Parts and Accessories warehouse on and after January 5, 1982? If so, what is the remedy? Furthermore, the parties agreed to have the arbitrator decide whether the Company's actions violated the National Labor Relations Act ("The Act").

In a December 9, 1982 decision the arbitrator found that by subcontracting the aforementioned work, the Company violated both the Agreement and the Act. In reaching this decision, the arbitrator initially found that previous arbitration awards and various provisions within the Agreement allowed subcontracting under certain circumstances. Thus, the dispute's resolution hinged on whether the present circumstances precluded the subcontracting.

As viewed by the arbitrator, the present circumstances' pertinent aspects were two-fold. First, the Company's express purpose in subcontracting the bargaining unit work to employees of another company was to obtain lower wage and benefit costs and a relaxation of work rules. Second, Article I § 1(D) of the Agreement forbids subcontracting for the purpose of discrimination against the Union. Therefore, the issue, as refined by the arbitrator, was whether the Company's subcontracting solely for economic reasons was done for the purpose of discrimination against the Union.

In resolving this issue, the arbitrator first distinguished the present case from the prior arbitration award upholding the Company's right to subcontract. In the 1971 arbitration award, the distinguishing factors present were that the subcontract was for a short period of time, no employees were on layoff at the time of the subcontracting and business was booming. None of these factors were present in the instant case. The arbitrator distinguished the 1978 arbitration award from the present case for the reasons that there the Company's insufficient space necessitated the subcontracting, no layoffs resulted in the bargaining unit and the employees were not adversely affected by the decision to subcontract. The arbitrator thus determined that these previous arbitration

awards were not determinative of the present case.

The arbitrator proceeded to decide the instant case on its own merits. He found that the only factor compelling the present subcontracting was the Company's desire to pay less for the work performed in the Parts and Accessories warehouse. Both the nature of the work and the Company's ability to accomplish the work with its own workforce did not change. Relying on the National Labor Relations Board's ("The Board") decision in *Los Angeles Marine Hardware Co.*, 235 NLRB 720 (1978), *aff'd*, 602 F.2d 1302 (9th Cir.1979), the arbitrator found that the present case's subcontracting solely for economic reasons discriminated against the Union. The arbitrator found that the Company's "purpose was to end its contract with the Union covering the employees it represents in the warehouse, rather than accept terms and conditions negotiated with the Union, either existing terms or mutually negotiated changes." Arbitration Award at 43. Indeed, the arbitrator opined that if such subcontracting was not discriminatory, he would have difficulty in deciding what would constitute a discriminatory transfer of work in violation of Article I § 1(D) of the Agreement. *Id.* Furthermore, the arbitrator summarily found that the subcontracting violated the Act based on the Board's decision in *Los Angeles Marine*, *supra*.

## II. DISCUSSION

### A. *Review of the Arbitration Award.*

■ The Court must first determine the degree of deference owed to Arbitrator Krinsky's award. It is well-established that the Court will undertake only limited review of an arbitration award. *United Steel Workers of America v. American Mfg. Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). Moreover, the limited extent of such review has been recently clarified by the Seventh Circuit in *Jones Dairy Farm v. Local No. P–1236*, 760 F.2d 173 (7th Cir.1985). That case held that an arbitrator's award cannot

be set aside merely because the arbitrator erroneously interpreted and applied existing law. *Id.* at 176. However, if the arbitrator disregarded the law and applied some private notion of equity, courts can set aside the award. *Id.*

### B. *Whether Jones Dairy Farm Controls This Case.*

The Company asserts that *Jones Dairy Farm* does not control the present case's resolution. This assertion is based on discussion in *Jones Dairy Farm* concerning the employer in that case agreeing to submit the matter at issue to arbitration, where it was arguably not required to so submit. The Seventh Circuit stated that "[b]y going forward with the arbitration without questioning the arbitrator's authority to resolve the dispute, [the employer] consented to have him decide what 'legal rights' in the contracting-out clause meant." *Jones Dairy Farm*, 760 F.2d at 176. Based on this and other statements in *Jones Dairy Farm*, the Company asserts that since the Agreement required the present matter's submission to arbitration, it should not be bound by the arbitrator's ruling. Essentially, the Company's position is that *Jones Dairy Farm* precludes a party to an arbitration proceeding from challenging the arbitrator's interpretation and application of law only if it erroneously conceded the arbitrator's authority to resolve the matter.

The spurious nature of the Company's position is apparent from its mere presentation. Why should a court give greater deference to an arbitrator's award resulting from its unnecessary submission to arbitration than to an arbitrator's award resulting from its correct submission to arbitration? Reconciling such a distinction strains credulity. It seems that only a purpose to punish the party who submits a matter to arbitration when it need not so submit, would justify such a distinction. However, based on a full reading of *Jones Dairy Farm*, it is clear that such was not the Seventh Circuit's purpose.

In *Jones Dairy Farm,* the employer contended that the arbitrator lacked authority to resolve the dispute. 760 F.2d at 175. In disposing of this contention, the Court stated that the employer must abide by the arbitration award since it initially conceded the arbitrator's authority to resolve the dispute. This ruling was extraneous to the holding that an arbitrator's interpretation and application of law must be upheld unless the arbitrator disregards the law and bases his decision on some private notion of equity. It responded to the employer's challenge of the arbitrator's *authority* to resolve the dispute. The challenge at issue was not to the arbitrator's interpretations of law employed in resolving the dispute.

■ By disposing of the case in this manner, it is unlikely that the Seventh Circuit intended to limit its holding solely to situations where a party erroneously concedes the arbitrator's authority to resolve a matter. The *Jones Dairy Farm* mandate that the arbitrator's legal interpretations are conclusive should apply to all parties who submit a matter to arbitration. This mandate should apply whether the arbitrator's authority stems from the parties' consent, albeit unrequired by the Agreement, or whether it stems from contractual terms to which the parties consented when they freely entered into the Agreement. The Court therefore finds that *Jones Dairy Farm* is applicable in the present case.

### C. *Application of Jones Dairy Farm.*

■ Based on *Jones Dairy Farm,* it must be determined whether the arbitrator disregarded the law and applied his own private notions of equity in ruling for the Union. In his ruling, the arbitrator relied greatly on *Los Angeles Marine Hardware Co.,* 235 NLRB 720 (1978), *aff'd,* 602 F.2d 1302 (9th Cir.1979). In *Los Angeles Marine,* the Board found anti-union discrimination in a situation where a company closed one facility and moved its operation to another to escape the bargaining unit's high labor costs. The company and union were bound to a collective bargaining agreement at the time. Since the present case involves the Company's subcontracting of bargaining unit work to escape high labor costs pursuant to an effective Agreement, the arbitrator's finding that *Los Angeles Marine* directly applied to the present case is justifiable. Certainly this finding did not disregard the law.

The Company asserts that the arbitrator disregarded controlling precedent in his ruling. The Company first argues that *American Ship Bldg. Co. v. Labor Board,* 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965), required the arbitrator to find that the Company's subcontracting was nondiscriminatory. *American Ship* involved an employer "locking out" union members during negotiations for a new labor contract when the negotiations had reached an impasse. Such action was found to be non-discriminatory since the employer was not motivated by an anti-union purpose. The present case poses dissimilar facts justifying the arbitrator's failure to apply *American Ship.* There were no negotiations for a new labor contract. Rather, there was a contract in full force which the employer sought to escape as to the Parts and Accessories warehouse employees. Moreover, *American Ship* did not involve subcontracting. Based on these differences the arbitrator was justified in relying on the Board's decision in *Los Angeles Marine* which involved similar facts and which was subsequently affirmed by the Ninth Circuit.

The Company further argues that the arbitration award disregarded prevailing law embodied in *Sears, Roebuck & Co. v. Teamsters,* 683 F.2d 154 (6th Cir.1982) and *University of Chicago v. NLRB,* 514 F.2d 942 (7th Cir.1978). This argument could be readily dismissed pursuant to the statement in *Jones Dairy Farm, supra,* that "the arbitrator cannot be seriously faulted ... for refusing to be bound (as the Board itself refuses to be bound) by circuit precedent." 760 F.2d at 177. However, examination of these cases reveals that the arbitrator's ruling conformed with them. *Sears* found that "when the parties to a collective bargaining agreement have negotiated a clear, unambiguous subcontracting

provision, an arbitrator lacks discretion to alter the effect of that provision by performing, *sua sponte*, a 'balancing test'." 683 F.2d at 156. The Company's assertion that the arbitrator implicitly applied a "balancing test" is without merit. This assertion is based on pure conjecture since the arbitrator expressly disavowed basing his decision on equitable considerations. Arbitration Award at 40. His decision was based on the finding of discrimination.

Likewise, the arbitrator's award did not disregard the Seventh Circuit's holding in *University of Chicago*. That case held, *inter alia*, that an employer is free to transfer work out of the bargaining unit if it is not motivated by anti-union animus. 514 F.2d at 949. In the present case, the arbitrator found that the Company acted with a discriminatory purpose in its subcontracting decision. Thus, the arbitrator did not disregard *University of Chicago*.

## III. CONCLUSION

For the reasons stated above, the Court finds that the arbitrator did not disregard the law and apply his own notions of equity. Thus, the Court upholds the arbitration award and enters summary judgment in favor of the Union. The Court remands this case to Arbitrator Krinsky to resolve the issue of damages by determining the amounts that are owing and to whom owed pursuant to Paragraphs 4, 5 and 6 of his award.