**Affirmed and Opinion filed February 27, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00535-CV

---

### SCOTT D. MORGAN, Appellant

### V.

### BRONZE QUEEN MANAGEMENT COMPANY, LLC, Appellee

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2013-08050**

---

# O P I N I O N

This is an interlocutory appeal from the denial of a motion to compel arbitration. In a single issue, appellant Scott D. Morgan (Morgan) asserts that the trial court erred in refusing to compel arbitration of the underlying dispute for three reasons: (1) the claim was previously submitted to arbitration, but withdrawn; (2) appellee, Bronze Queen Management Company, LLC (Bronze Queen), has waived the right to challenge arbitrability; and (3) the agreement between the parties requires arbitration of the claim. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Morgan financed numerous real estate development projects with Amegy Bank over several years. In 2007, in connection with one of these real estate developments, MRI Playa Vista, LP executed a promissory note payable to Amegy, and Morgan guaranteed the note.[1]

Morgan and Amegy executed a modification of the guaranty in May 2010, with an effective date of October 2009. The Modification specified that disputes related to the note or the Modification would be determined by arbitration in accordance with a second agreement, The Arbitration Agreement and Jury and Class Action Waiver. The Modification states:

> EXCEPT AS EXPRESSLY EXCLUDED THEREIN, ALL CLAIMS, DISPUTES AND OTHER MATTERS IN QUESTION BETWEEN THE PARTIES TO THIS NOTE ARISING OUT OF OR RELATING TO THE NOTE AND/OR THIS MODIFICATION OR ANY OF THE LOAN DOCUMENTS OR ANY OTHER INSTRUMENTS EXECUTED IN CONNECTION WITH THE NOTE OR THIS MODIFICATION SHALL BE DECIDED BY ARBITRATION IN ACCORDANCE WITH THE PROCEDURES SET FORTH IN THE ARBITRATION AGREEMENT, JURY AND CLASS ACTION WAIVER BY BORROWER, GUARANTOR AND LENDER.

As relevant here, The Arbitration Agreement and Jury and Class Action Waiver (the Agreement), contains two main sections. The first is a section entitled "JURY TRIAL WAIVER; CLASS ACTION WAIVER," in which the parties waive their rights to a jury trial and to bring a class action. In the second section entitled "ARBITRATION," the Agreement grants the parties the right to compel arbitration if a court holds the jury trial waiver to be invalid. It further specifies

---

[1] In June of 2009, Morgan and Amegy executed a Change in Terms Agreement containing a broad arbitration clause, which was superseded by the later agreements at issue here. The parties do not contend that the Change in Terms Agreement mandates arbitration.

that certain issues are not subject to arbitration, such as the "validity, enforceability, meaning or scope of this arbitration provision." Specifically, the limited arbitration agreement provides (with emphasis supplied):

> JURY TRIAL WAIVER; CLASS ACTION WAIVER. As permitted by applicable law each party waives their respective rights to a trial before a jury in connection with any Dispute (hereinafter defined) and **Disputes shall be resolved by a judge sitting without a jury.** If a court determines that this provision is not enforceable for any reason and at any time prior to trial of the Dispute, but not later than 30 days after entry of the order determining this provision is unenforceable, any party shall be entitled to move the court for an order compelling arbitration and staying or dismissing such litigation pending arbitration ("Arbitration Order"). If permitted by applicable law, each party also waives the right to litigate in court or an arbitration proceeding any Dispute as a class action, either as a member of a class or as a representative, or to act as a private attorney general.

> ARBITRATION. If a claim, dispute or controversy arises between the parties hereto with respect to the Loan, this Agreement, related agreements or any other agreement or business relationship between any of the parties hereto whether or not related to the subject matter of this Agreement (individually and collectively called a "Dispute"), **and only if a jury trial waiver is not permitted by applicable law or ruling by a court,** any of the parties hereto may require that the Dispute be resolved by binding arbitration before a single arbitrator at the request of any party. By agreeing to arbitrate a Dispute each party gives up any right that party may have to a jury trial as well as other rights that party would have in court that are not available or are more limited in arbitration such as the rights to discovery and to appeal.

In August 2010, Amegy sued Morgan for breach of his guaranty of another promissory note unrelated to this dispute. The parties agreed to arbitrate that dispute. Morgan filed a Demand for Arbitration with JAMS and a Statement of Claim, in which he alleged multiple claims against Amegy.

In March 2011, Amegy added affirmative claims to the arbitration, alleging guaranty claims against Morgan relating to several loans, including the Playa

3

guaranty at issue here. On September 2, 2011, Amegy sold the Playa note and guaranty to appellee Bronze Queen. On September 13, 2011, Amegy amended its arbitration pleadings to nonsuit the Playa claims at issue in this proceeding.

At arbitration on October 24, 2011, the arbitrator resolved the remaining claims and issued an award in January 2012. The district court confirmed the award and signed a final judgment on January 17, 2013.

On February 11, 2013, Bronze Queen sued Morgan for breach of the Playa guaranty. Morgan moved to compel arbitration, which the trial court denied, and this appeal followed.

## GOVERNING LAW AND STANDARD OF REVIEW

Arbitration cannot be ordered in the absence of an agreement to arbitrate. *See Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994). Thus, despite strong presumptions that favor arbitration, a valid agreement to arbitrate is a settled, threshold requirement to compel arbitration. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737–38 (Tex. 2005) (orig. proceeding). Courts apply state contract law in determining whether there is a valid agreement to arbitrate. *See In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding).

Texas procedure controls the determination of arbitrability of this dispute. *See Jack B. Anglin Co., Inc., v. Tipps,* 842 S.W.2d 266, 268–69 (Tex. 1992). Under Texas law, the trial court conducts a summary proceeding to make the gateway determination of that issue. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding).

When reviewing a denial of a motion to compel arbitration, if the court's factual findings are in dispute, we review the court's denial of the motion to compel under a legal sufficiency or "no evidence" standard of review. *J.M.*

4

*Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). We defer to the trial court's factual determinations that are supported by evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Service, L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

## ANALYSIS

Morgan argues that the trial court erred in denying his motion to compel arbitration because an agreement to arbitrate the Playa claims exists for three reasons: (1) Amegy and Morgan formed a binding arbitration agreement by submitting the Playa guaranty claim to arbitration; (2) Amegy waived the arbitrability issue because it submitted the Playa guaranty claim to arbitration and pursued it for months; and (3) Amegy and Morgan agreed to arbitrate the Playa Guaranty in the Modification agreement. Morgan also asserts that Bronze Queen is bound by Amegy's agreements and conduct.

**1. There was no agreement to arbitrate by submitting and then withdrawing a pleading in arbitration.**

Morgan contends that Amegy agreed to arbitrate this dispute because it affirmatively asked the arbitrator to decide the Playa guaranty claim when it amended its arbitration pleadings to include that claim. Bronze Queen responds that inclusion of the Playa claim in a pleading does not constitute an agreement to arbitrate.

Morgan asserts he accepted Amegy's offer to arbitrate the Playa guaranty claim when he continued to participate in the arbitration, he "engaged on the merits," and made no objection to Amegy's amended pleading bringing the claim into the arbitration. Morgan asserts he therefore accepted by conduct and acquiescence.

Morgan cites cases where the courts have found an agreement to arbitrate

5

but none contain the same facts as present here—a pleading in arbitration that was nonsuited before any trial before the arbitrators. *See Massey v. Galvan*, 822 S.W.2d. 309, 315 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (holding offer to arbitrate was accepted and contract to arbitrate was ratified by performance where claim was submitted to the arbitrator and a ruling obtained); *Kamakazi Music Corp. v. Robbins Music Corp*., 684 F.2d 228, 231 (2d Cir. 1982) (claim was litigated through final resolution and party did not attempt to rescind arbitration demand until after the arbitrator issued an award).

Morgan also cites cases where the parties both agreed in writing to submit a claim to the arbitrators. *See Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980) (recognizing that in addition to entering into a written submission agreement, parties may ask the arbiter to decide a specific written grievance, which becomes the submission agreement); *InterSecurities, Inc. v. Bernard,* No. 07-720-C, 2009 WL 4716028, at *3 (M.D. La. Dec. 9, 2009) (the parties each executed a "Uniform Submission Agreement," agreeing to submit the controversy to arbitration).

While Bronze Queen recognizes that an offer to arbitrate may be accepted by performance, it argues that the principle is inapplicable here because there is no evidence of performance. Bronze Queen denies that Morgan accepted any offer to arbitrate expressly or by performance. Bronze Queen argues that the offer to arbitrate the Playa claim was revoked before Morgan accepted it. Bronze Queen points out that Amegy nonsuited the Playa guaranty claim before any action had been taken on the claim by the arbitrator. In addition, its nonsuit was in accordance with JAMS Rule 13(b). The rule permits an objection to the nonsuit and allows a

6

party to seek a determination that the nonsuit is made with prejudice.[2] Morgan did not object to the nonsuit.

As a matter of basic contract formation principles, an agreement to arbitrate is not created by a unilateral offer from one party. Contracts require mutual assent to be enforceable. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam). It is well-settled that to have a binding contract, the offer must be accepted in strict compliance with its terms. *Coleman v. Reich*, ___ S.W.3d ___, 2013 WL 3353992, at *2 (Tex. App.—Houston [14th Dist.] July 2, 2013, no pet.). It is also established that an offer may be revoked before acceptance. *See Bowles v. Fickas*, 140 Tex. 312, 167 S.W.2d 741, 743 (1943); *see also Liberty Mut. Ins. Co. v. Mandaree Pub. Sch. Dist. #36*, 503 F.3d 709, 712–13 (8th Cir. 2007) (recognizing arbitrator's denial of a request to amend a counterclaim in arbitration effectively revoked the offer before acceptance and later consent to join arbitration did not form an agreement to arbitrate).

The parties dispute whether there was acceptance of an offer creating an implied agreement to arbitrate the Playa guaranty claim. Whether the parties reached an agreement is a question of fact. *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). We review this factual dispute under a "no evidence" standard of review. *See J.M. Davidson*, 128 S.W.3d at 227. The record contains no evidence that Morgan accepted an offer to arbitrate the dispute by performance. Accordingly, the trial

---

[2] JAMS Rule 13(b) provides:

> (b) A Party that asserts a claim or counterclaim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and on the Arbitrator. However, the opposing Parties may, within fourteen (14) calendar days of service of notice of the withdrawal of the claim or counterclaim, request that the Arbitrator order that the withdrawal be with prejudice. If such a request is made, it shall be determined by the Arbitrator.

JAMS Comprehensive Arbitration Rules & Procedures.

court's factual determination that there was no implied contract to arbitrate the underlying dispute must be affirmed.

### 2. There was no waiver.

In a related argument, Morgan contends that Amegy, and thereby its successor, may not contest arbitration after having invoked arbitration of the dispute over the guaranty in a previous arbitration proceeding. Morgan asserts that Amegy both submitted the Playa guaranty claim to arbitration without reservation and litigated the claim before the arbitrator for over seven months. He argues that Amegy's submission of the Playa guaranty claim to arbitration constitutes waiver of the arbitrability issue.[3] Bronze Queen strongly disputes that the Playa guaranty claim was litigated in arbitration.

"Waiver" requires the voluntary and intentional relinquishment of a known, existing right, or intentional conduct inconsistent with claiming that right. *Emscor Mfg., Inc. v. Alliance Ins. Group*, 879 S.W.2d 894, 917 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Therefore, waiver is largely a matter of intent; thus, for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex. 1996) (addressing waiver of arbitration rights).

The authorities Morgan cites do not support his claim that Amegy has waived the arbitrability issue. In *Piggly Wiggly*, neither party questioned the arbitrability of the dispute until after an issue was decided adversely to the employer. 611 F.2d at 584 ("On whatever basis it rests, waiver, estoppel or new

---

[3] Morgan alternatively alleges Amegy is estopped from challenging arbitrability by invoking the arbitration process. Although not fully developed in the briefing, we construe this argument to allege that the offer to arbitrate may not be withdrawn because Morgan has "taken substantial action based upon it." *See Perry Homes v. Cull*, 258 S.W.3d 580, 595 (Tex. 2008) (recognizing that estoppel includes a prejudice requirement, in holding that waiver of arbitration requires a showing of prejudice). Accordingly, our waiver analysis also applies to this estoppel claim.

contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute."). In contrast to this case, the dispute in *Piggly Wiggly* was actually submitted to, and decided by, the arbitrator.

Morgan also cites *Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union, AFL-CIO*, 760 F.2d 173 (7th Cir. 1985). "If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it.*" Id.* at 175. In *Jones Dairy Farm,* the court found waiver because an objection to the arbitrator's jurisdiction was not raised until after the entire arbitration was completed and the arbitrator had issued its ruling. *See id.* As in *Piggly Wiggly,* the issue was actually submitted to the arbitrator and the arbitrator rendered a decision. *See id.*

Most Texas cases that discuss waiver in connection with arbitration do so from the opposite position—in those cases the parties argue that arbitration was waived by participation in a lawsuit. Because of the strong presumption against waiver of arbitration, the courts do not readily find waiver and require a showing of prejudice. A party waives a right to arbitration by substantially invoking the judicial process to the other party's detriment or prejudice. *See Perry Homes*, 258 S.W.3d at 589–90. Waiver can be implied from a party's conduct, although that conduct must be unequivocal. *See id*. at 593. In the context of waiver of an arbitration clause, "prejudice" relates to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue. *Id.* at 597.

For example, filing suit, by itself, does not constitute a waiver of arbitration rights. *In re D. Wilson Constr. Co*., 196 S.W.3d 774, 783 (Tex. 2006) (orig.

proceeding). Engaging in minimal discovery also does not establish waiver. *Id.* (citing *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 762 (Tex. 2006) (per curiam)). This court has rejected a claim that filing a motion for mediation substantially invoked the judicial process or was prejudicial to the parties agreeing to the motion. *See Courtland Bldg. Co., Inc. v. Jalal Family P'ship, Ltd*, 403 S.W.3d 265, 275–76 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

In *McReynolds v. Elston,* this court addressed a contention that appellant waived his right to stay a pending arbitration by "participating in the arbitration for a year before filing the motion [to stay arbitration]." 222 S.W.3d 731 (Tex. App.—Houston [14th Dist.] 2007, no pet.). McReynolds contended that the claim should have been arbitrated in a different arbitration proceeding and not in the pending AAA arbitration. As with claims that a party has substantially invoked the judicial process, we considered the actions that were alleged to have invoked arbitration in determining whether the right to object to arbitration had been waived. *See id.* at 741–42. We held there was no waiver, finding the AAA arbitration process was not substantially invoked, despite appellant's filing a counterclaim, waiting over a year to seek to stay the arbitration proceedings, and otherwise participating in pre-hearing proceedings. *Id.* at 742.

We therefore consider whether the arbitration process was substantially invoked in this case to determine whether the right to contest arbitrability has been waived. Bronze Queen correctly asserts that Morgan cites no record evidence to support his claim the Playa guaranty was actually litigated in arbitration proceedings. When pressed for evidence the claim was actually litigated, at oral argument Morgan referenced his motion to compel arbitration which generally referred to discovery related to the Playa dispute.[4] Because the motion was

---

[4] The motion states: "Prior to assigning the guaranty to Bronze Queen, Amegy engaged in

verified, Morgan contends it constitutes evidence supporting his contention. We reject Morgan's contention that these general statements in his motion to compel arbitration are sufficient to demonstrate the Playa guaranty claim was litigated in arbitration, waiving the right to contest arbitrability. *See D. Wilson Constr.,* 196 S.W.3d at 783 (engaging in minimal discovery does not establish waiver).

In contrast to Morgan's cited authorities, there was no submission of the claim to the arbitrator for resolution on the merits. There is no evidence Amegy substantially invoked the arbitration process as to constitute a waiver We conclude that filing a counterclaim in arbitration and withdrawing it before the claim is submitted to the arbitrator for decision does not constitute waiver.

### 3. The contract does not require arbitration of this dispute.

Where, as here, the signatories to the contract have agreed that the Federal Arbitration Act applies, courts nonetheless apply state contract law in determining whether there is a valid agreement to arbitrate. *See In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding). "Whether a valid arbitration agreement exists is a legal question subject to de novo review." *In re D. Wilson Constr. Co*., 196 S.W.3d at 781 (citing *J.M. Davidson, Inc.*, 128 S.W.3d at 227). If a valid arbitration agreement exists, then a strong presumption arises favoring arbitration, and the burden shifts to the party opposing arbitration to raise an affirmative defense to its enforcement. *J.M. Davidson, Inc*., 128 S.W.3d at 227. "[T]he presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists because the purpose of the FAA was to make

---

discovery related to Playa Vista. Amegy requested documents from Morgan, including correspondence, partnership agreements, statements, contracts, meeting minutes, and other documents related to the Playa Vista project. The Playa Vista project and note were discussed during the deposition of Scott Morgan and other witnesses. As part of the Arbitration, [the arbitrator] made rulings concerning the documents at issue in this case. [The arbitrator] ruled on certain clauses of the Playa notes and agreements, including the validity of release and waiver provisions."

arbitration agreements as enforceable as other contracts, not more so." *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737–38 (internal citations and quotation marks omitted).

Morgan asserts the arbitration clause in the Modification encompasses the Playa guaranty claim. The Modification states:

> Except as expressly excluded therein, all claims, disputes and other matters in question between the parties to the [Playa] Note arising out of or relating to the [Playa] Note and/or this Modification or any of the loan documents or any other instruments executed in connection with the [Playa] Note or this Modification shall be decided by arbitration in accordance with the procedures set forth in the Arbitration Agreement, Jury and Class Action Waiver by borrower, guarantor and lender.

The Agreement was executed at the same time as the Modification. In interpreting these two agreements, we should give words in the agreements their plain meaning. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157–59 (Tex. 2003).

Morgan contends that the Agreement contains a general, broad arbitration clause. The agreement contains a jury trial waiver and grants parties the right to demand arbitration "only if a jury trial waiver is not permitted by applicable law or ruling by a court." In all other cases, the disputes "will be resolved by a judge sitting without a jury." The Agreement prohibits arbitration of certain claims and issues, including class actions and the "validity, enforceability, meaning or scope of this arbitration provision." Based on this language, Bronze Queen responds that Morgan and Amegy did not agree to arbitrate claims related to the Playa note; they instead agreed *not* to arbitrate such claims. Despite its title—Arbitration Agreement and Jury Trial and Class Action Waiver—the Agreement is not an arbitration agreement, but an agreement to resolve disputes by a bench trial,

waiving the right to a jury. It is the substance of the provision, not its label, that controls. *See Stedman v. Georgetown Sav. & Loan Ass'n*, 595 S.W.2d 486, 488 (Tex. 1979) (courts look behind the form or labels in a transaction to determine actual substance); *Luckel v. White*, 819 S.W.2d 459, 463 (Tex. 1991) (stating labels are not controlling and courts are to give effect to the substance of unambiguous provisions).

The arbitration provision in the Agreement is conditioned on (1) a statute or controlling case law making a jury waiver unenforceable, or (2) a court order or other judicial finding that the jury trial waiver in the agreement is not enforceable. Neither is applicable in this case. Contractual jury waivers are permitted under both state and federal law. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124 (Tex. 2004) (orig. proceeding) (upholding enforceability of contractual jury trial waiver). Moreover, our record contains no court order or finding that the jury waiver is unenforceable.

Although Morgan acknowledges that the Agreement supersedes other arbitration agreements, Morgan asserts the arbitration clause in the Modification provides an exception to the Agreement and mandates arbitration for disputes relating to the Playa note unless there is a specific exclusion in the Agreement, such as the exclusion provided for class action claims or matters involving the validity of the arbitration provision.

We disagree. The Modification states that arbitration will apply according to the Agreement "[e]xcept as expressly excluded therein." The Agreement expressly excludes from arbitration every claim for which a jury trial waiver was allowed. It provides: "Disputes shall be resolved by a judge sitting without a jury." The Agreement further provides "only if a jury trial waiver is not permitted by applicable law or ruling by a court, any of the parties hereto may require that the

13

Dispute be resolved by binding arbitration." A plain reading of these provisions requires a determination that the Playa guaranty claim is excluded from arbitration because the jury waiver provision is effective, mandating a bench trial of this dispute. In addition, the Modification expressly provides:

> Borrower agrees that any dispute involving the note, modification or any of the loan documents or any other instruments executed in connection with the note, shall be brought only in the district courts of Harris County, Texas or the United States District Court for the Southern District of Texas, Houston Division.

Bronze Queen argues this language further indicates the parties' intent *not* to arbitrate this dispute, but instead to have the dispute resolved in court. We agree.

We hold that the Modification Agreement does not require arbitration of this dispute.

## CONCLUSION

Having concluded that there is no agreement to arbitrate the underlying dispute—whether express, implied, or by waiver—we need not address Morgan's assertion that Bronze Queen is bound by Amegy's agreements and conduct.[5] We overrule Morgan's sole issue. The trial court's order denying Morgan's motion to compel arbitration is affirmed.

/s/     Tracy Christopher
        Justice

Panel consists of Justices Boyce, Christopher, and Brown.

---

[5] Specifically, we have not addressed Morgan's argument that Bronze Queen is required to arbitrate under a direct-benefits-estoppel theory. *See In re Kellogg Brown & Root,* 166 S.W.3d at 741.