

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00282-CV

———————————————

LELAND PENNINGTON, INC., Appellant

V.

BRANDON BULLS AND CASEY WEAVER, Appellees

On Appeal from the 442nd District Court
Denton County, Texas
Trial Court No. 18-3441-442

Before Birdwell, Womack, and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

In this interlocutory appeal involving a dispute over the construction of a home, Appellant Leland Pennington, Inc. complains of the trial court's denial of its motion to compel arbitration of its claims against Appellees Brandon Bulls and Casey Weaver. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1). Concluding that Pennington failed to prove the existence of a valid arbitration agreement, or alternatively waived arbitration, we affirm.

## II. BACKGROUND

After KLR Development, LLC and Appellees entered into an agreement to construct Appellees' Denton residence, Pennington contracted with KLR to do concrete work on the project. Pennington performed work on the project[1] and then filed suit against KLR and Appellees, claiming that it had not been paid the amount that it was owed. Appellees filed a counterclaim, stating that the "wrong concrete had been ordered and used," and alleging violations of the Deceptive Trade Practices Act, fraudulent lien, breach of the implied warranty of fitness for a particular purpose, negligence, and breach of contract.

---

[1]In one of its motions, Pennington described the dispute as follows: "1. Bulls and Casey are building a home. The plans called for the foundation to be poured with 4000 PSI concrete. 2. Pennington mistakenly ordered and poured 3000 PSI concrete on a portion of the foundation. 3. When the mistake was discovered, Pennington ordered a hammer test that showed that the concrete strength exceeded 4000 PSI and demanded payment in full."

2

Later, Pennington nonsuited KLR after settling with it and receiving an assignment of all claims KLR had against Appellees. In its amended pleadings against only Appellees, Pennington attached an unsigned contract purporting to be between Appellees and KLR and stated, "While it is believed that the parties executed the contract, a fully executed contract has been lost or is otherwise unavailable to [Pennington]."

After conducting discovery and filing motions for summary judgment, Pennington filed its motion to compel arbitration. Appellees filed a response to the motion and stated that they opposed arbitration because (1) there is no signed agreement to arbitrate; (2) even if there had been an agreement to arbitrate, both Pennington and KLR waived their right to seek arbitration by substantially invoking the judicial process; and (3) they are prejudiced by Pennington's substantial delay in moving to compel arbitration. After a hearing, the motion was denied by written order dated August 31, 2020. Four days later, the trial court entered an order partially granting Appellees' motion for summary judgment.[2] That order stated that Pennington take nothing on its claim against Appellees for breach of contract, promissory estoppel, and quantum meruit. Pennington filed its notice of appeal of the order denying arbitration on the same day. Thereafter, the trial court signed an order abating the trial court's proceedings pending the appeal.

---

[2]The clerk's record reflects that the hearing on the motion for summary judgment was set by "agreed email" for September 1, 2020.

# III. DISCUSSION

## A. Standard of Review

We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018), *cert. denied*, 139 S. Ct. 184 (2018); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding). We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Henry*, 551 S.W.3d at 115.

"[W]e review de novo a trial court's determination regarding whether a valid agreement to arbitrate exists and its construction of an unambiguous arbitration agreement." *Apache Corp. v. Wagner*, Nos. 02-18-00132-CV, 02-18-00135-CV, 2018 WL 6215739, at *6 (Tex. App.—Fort Worth Nov. 28, 2019, pet. denied) (mem. op.). And the question of whether a nonsignatory can compel arbitration implicates the existence of an agreement to arbitrate, which is another question that we review de novo. *ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084, at *3 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, no pet.) (mem. op.) (citing *In re Rubiola*, 334 S.W.3d 220, 223–24 (Tex. 2011) (orig. proceeding) and *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding)).

## B. The Law

Arbitration is a creature of contract between consenting parties. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 629 (Tex. 2018). A party seeking to

4

compel arbitration must establish that there is a valid agreement to arbitrate, that the claims are within the scope of the agreement, and that the claims are arbitrable. *Henry*, 551 S.W.3d at 115; *In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 485 (Tex. 2001) (orig. proceeding); *Haddock v. Quinn*, 287 S.W.3d 158, 169 (Tex. App.—Fort Worth 2009, pet. denied). The first question to be answered is whether there is a valid arbitration agreement between the parties. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 525 (Tex. 2015). This initial burden of establishing an arbitration agreement's existence is evidentiary and runs with the party seeking to compel arbitration. *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 812 (Tex. App.—El Paso 2014, no pet.). The presumption in favor of arbitration arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737–38 (Tex. 2005) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)).

Under Texas law, the trial court conducts a summary proceeding to determine the applicability of an arbitration clause. *In re Estate of Guerrero*, 465 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (citing *Weekley Homes*, 180 S.W.3d at 130); Tex. Civ. Prac. & Rem. Code Ann. § 171.021(b) ("If a party opposing an application [for arbitration] denies the existence of the agreement, the court shall summarily determine that issue."). The trial court makes this summary determination based on the parties' affidavits, pleadings, discovery, and stipulations. *Guerrero*, 465 S.W.3d at 700.

The proceeding moves to an evidentiary hearing only if there are fact issues concerning the existence of the agreement. *Gainey v. Minoo, LLC*, No. 02-19-00171-CV, 2019 WL 6768128, at *4 (Tex. App.—Fort Worth Dec. 12, 2019, no pet.) (mem. op.). As we explained in an earlier case,

> In the trial court, motions to compel arbitration are treated somewhat similarly to motions for summary judgment. [*Doe v. Columbia N. Hills Hosp. Subsidiary, L.P.*, 521 S.W.3d 76, 81 (Tex. App.—Fort Worth 2017, pet. denied)] (citing *In re Jebbia*, 26 S.W.3d 753, 756–57 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268–69 (Tex. 1992)). The same evidentiary standards apply, and the party alleging that an arbitration agreement exists must present summary proof that the dispute is subject to arbitration (through affidavits, pleadings, discovery, or stipulations), and the party resisting arbitration may contest the opponent's proof or present evidence supporting the elements of a defense to enforcement. *Id.* If the evidence raises a genuine issue of material fact, the trial court must conduct an evidentiary hearing to resolve the factual dispute. *Id.* (citing *Jack B. Anglin Co.*, 842 S.W.2d at 269; [*Guerrero*, 465 S.W.3d at 700]).

*Hawk Steel Indus., Inc. v. Stafford*, No. 02-19-00040-CV, 2019 WL 3819506, at *2 (Tex. App.—Fort Worth Aug. 15, 2019, pet. denied) (mem. op.).

## C. Application of Law to Facts

On appeal, Pennington raises eight issues, all complaining of "possible grounds" on which the trial court erred in denying its motion to compel arbitration. The "possible grounds" include that there was no agreement to arbitrate, that Pennington waived the right to arbitrate, that a prior defendant who assigned Pennington the right to arbitrate waived the right, that Pennington is asserting a claim that KLR does not possess, that Appellees have asserted their own claims against

6

Pennington, that KLR released its claims, that there was no survivability of the right to arbitrate, and that there was no assignment of the right to arbitrate. Appellees phrase the issue as whether the trial court erred in denying the motion to compel arbitration based on the lack of clear, positive, and direct evidence of an agreement to arbitrate, and the substantial invocation of the litigation process by Pennington. Because whether an arbitration agreement exists is a threshold matter to be determined by the trial court, we will look first at that issue. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 124 (Tex. 2018) (stating that contract formation defenses—such as whether a party ever signed a contract—are threshold issues to be decided by the court); *see also Morgan v. Bronze Queen Mgt. Co.*, 474 S.W.3d 701, 705 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (stating that, "despite strong presumptions that favor arbitration, a valid agreement to arbitrate is a settled, threshold requirement to compel arbitration").

## 1. Existence of Arbitration Agreement

To support its motion to compel arbitration, Pennington attached the declaration of Glenn Kennedy, the owner of Kennedy Custom Home and Design and KLR, to its motion. Kennedy stated, in part:

> 4. Attached [as] Exhibit 1 to this declaration is a contract. Although the contract is not signed, there was eventually a contract signed by the parties that was based on this version of the contract. That signed contract was kept by the [Appellees].
>
> 5. The contract that was signed had a couple of very minor changes to Exhibit 1. None of these changes pertain to any of the provisions of the

7

contract discussed in this declaration. Furthermore, during the course of the construction project, the parties generally adhered to the contract.

. . .

7. The signed contract included, without modification or deletion, the provision in Exhibit 1 that reads as follows:

ARTICLE 12. ARBITRATION OF DISPUTES

12.1 Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

In their response to the motion to compel arbitration, Appellees disputed that there was a signed agreement to arbitrate. In support of its argument, they attached portions of the depositions of Kennedy and Bulls. In his deposition, after being handed what was purported to be the contract, Kennedy testified:

Q. (BY [PENNINGTON'S COUNSEL]) I'm going to hand you what I've marked as Exhibit No. 18 and ask you if that was a contract that was sent to the homeowners for review and approval.

(Exhibit 18 marked)

A. Yes, I believe this was. . . . Yeah, no, this looks a lot like it. There was some changes that [Appellees] had made on the original contract. There were some minor changes, and I don't know if this was the one that they made changes on.

Q. Do you remember what any of the changes were?

A. You know, I don't, but I believe I did see a copy of that contract - - I think they were relatively minor changes, like maybe dates

8

and times.  I don't remember all the - - but, yes, I'm familiar with this contract now, yes.

. . . .

Q.  All right.  And it's not signed - - if you go to the last page, it doesn't - - there's no signatures; is that right?

A.  Correct.

Q.  Did the homeowners ever sign this contract and return it to you?

A.  I believe - - I believe there is a signed contract.  I believe I do have a signed one.

Q.  You just can't find it?

A.  I may have looked - - yes, I got everything in boxes in storage, but, yes, I believe there is a signed contract.  Because there's - - there is a contract that the homeowners made - - well, I'm saying homeowners - - Casey, I believe, made some minor changes on it, and I think I have that copy somewhere.  I did see that.

Q.  Did you counter-sign it?

A.  I believe so, yes.

Disputing that he signed the agreement, Bulls testified at his deposition:

Q.  All right.  I want to hand you what's been marked to Mr. Kennedy's deposition as Exhibit 18 and ask if you can identify that.

A.  I've seen something similar.  I don't know that it's the exact one.

Q.  When you say you've seen something similar, are you saying that at some point during the process of building your home, Mr. Kennedy presented you with a proposed contract?

A.  Can you repeat your question?

9

Q. Yes. Are you saying that during the process of hiring Mr. Kennedy and having him build you a home that he presented you with a written contract?

A. Yes, he did present us with a written contract.

Q. Did you ever sign that contract?

A. I'm not sure because he made some modifications to it because he wanted to edit some things that weren't used on this project, so he - -

Q. Did you - - go ahead. Sorry.

A. There was one or two of these at least.

Q. Did you sign any of them?

A. Not that I'm aware of. I don't think he ever signed one either. I do know that we reviewed, you know, discussed it.

Q. And you don't know if this Exhibit 18 is the final iteration of what y'all were agreeing to as far as the contract was concerned or not; is that fair to say?

A. That is fair to say.

The trial court held a hearing on the motion to compel arbitration, and neither Pennington nor Appellees offered any additional evidence. At the conclusion of the hearing, the trial court took the matter under advisement. Later, the trial court signed an order denying arbitration. The order recites that the trial court "considered Plaintiff's Motion to Arbitrate, Defendants' response, the entire record, and arguments of counsel."

10

As the party seeking to compel arbitration, Pennington bore the burden to establish the existence of a valid and enforceable arbitration agreement. *Jody James Farms*, 547 S.W.3d at 633. While an arbitration agreement need not be in any particular form, it must clearly appear that the parties intended to submit their dispute to arbitration and to be bound by that decision. *Wetzel v. Sullivan, King & Sabom, P.C.*, 745 S.W.2d 78, 81 (Tex. App.—Houston [1st Dist.] 1988, no writ).

Although the agreement attached to the motion to compel arbitration contained an arbitration provision, Appellees disputed the existence of the agreement itself. Contract formation is a fundamental issue for the trial court to determine. *GJ Partners, Ltd. v. Cima Contractors, LLC*, No. 05-18-01412, 2020 WL 400180, at *6 (Tex. App.—Dallas Jan. 23, 2020, pet. filed) (mem. op.). To prove contract formation, a party must prove, among other elements, an offer, acceptance, and a meeting of the minds on all essential elements. *Lanier v. E. Found., Inc.*, 401 S.W.3d 445, 459 (Tex. App.—Dallas 2013, no pet.). In the absence of a signature on a contract, a court may look to other evidence to establish the parties' assent to the terms of the contract. *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex. App.—El Paso 2004, orig. proceeding); *see also Lujan v. Alorica*, 445 S.W.3d 443, 448–49 (Tex. App.—El Paso 2014, no pet.) ("When a party's signature is absent, other evidence must be presented to prove the party unconditionally and mutually assented to the terms of the contract.").

The record must be construed in a light favorable to supporting the trial court's ruling. *See Keller v. Nevel*, 699 S.W.2d 211, 212 (Tex. 1985). When, as here, a party

11

does not request findings of fact or conclusions of law and the trial court files none,[3] it is implied that the trial court made all necessary findings of fact to support its ruling. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). Because the trial court did not state a basis for its ruling in the order denying the motion to compel arbitration, we must uphold the trial court's ruling on any legal theory supported by the evidence. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Grand Homes 96, L.P. v. Loudermilk*, 208 S.W.3d 696, 702 (Tex. App.—Fort Worth 2006, pet. denied) (stating appellate court is required to uphold the trial court's ruling on a motion to compel arbitration if it is proper on any grounds).

When the facts are disputed, the trial court should conduct an evidentiary hearing. *In re Jebbia*, 26 S.W.3d 753, 759 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). Although a hearing on Pennington's motion was held, the trial court was not presented any evidence showing that the parties obtained or sought benefits under the contract. Thus, Pennington neither proved the existence of an arbitration agreement at the hearing nor offered any evidence to support its argument that the parties assented to the terms of the alleged contract.[4]

---

[3]In appeals from interlocutory orders, the trial court does not need to file findings of fact and conclusions of law, but may file them within thirty days after the order is signed. Tex. R. App. P. 28.1(c).

[4]Even if there was sufficient evidence of the existence of an agreement, Appellees argue that "whatever agreement existed between KLR and [Appellees] was completely and finally terminated in September of 2018, and that a full and unconditional release was given by KLR to [Appellees] long before KLR made any

Texas law encourages parties to resolve disputes through arbitration, but will not force them to arbitrate unless they have agreed to do so. *G.T. Leach Builders*, 458 S.W.3d at 508. By failing to show the existence of an arbitration agreement or assent to the terms of the alleged agreement, Pennington has failed to meet its burden

---

assignment of interests to Pennington." In support of this argument, the record shows that, by letter dated September 20, 2018, Appellees notified KLR that they were "immediately terminat[ing their] contract for a new house construction" because they "have lost confidence in the builder and do not believe that he is the best contractor to finish the job." The letter also demanded that KLR "immediately cease and desist acting as general contractor for the project and consider any previous agreements terminated." Thereafter, KLR signed a waiver and release, which provided in part:

> Unconditional Waiver and Release – This document waives and releases lien, stop payment notice, and payment bond rights the claimant has for labor and service provided, and equipment and material delivered, to the customer on this job through the Through Date [September 20, 2018] of this document. Rights based upon labor or service provided, or equipment or material delivered, pursuant to a written change order that has been fully executed by the parties prior to the date that this document is signed by the claimant, are waived and released by this document. The claimant has received the following FINAL payment [$4422.05]. The signer warrants that the signer has already paid or will use the funds received from this final payment to promptly pay in full all of the signer's laborers, subcontractors, materialmen, and suppliers for all work, materials, equipment, or services provided for or to the above referenced project up to the date of this waiver and release.

Pennington acknowledges the termination of any agreement with KLR in its second amended petition which states, "Soon after the progress payment for [Pennington's] work was submitted, [KLR] was terminated from the project." Based on our conclusion that Pennington failed to prove either the existence of an arbitration agreement or assent to the terms of the alleged contract, we do not address this argument on appeal. *See* Tex. R. App. P. 47.1 (requiring appellate courts to issue opinions addressing every issue raised that is necessary to final disposition).

13

to show that Appellees' claims in this lawsuit were subject to an arbitration agreement. *See Jody James Farms*, 547 S.W.3d at 633. We therefore conclude that the trial court did not abuse its discretion by denying Pennington's motion to compel arbitration.

## 2. Waiver of Arbitration

Even if Pennington had proven the existence of an arbitration agreement, Appellees contend that Pennington waived arbitration by substantially invoking the litigation process. Whether a party has substantially invoked the judicial process depends on the totality of the circumstances. *G.T. Leach Builders*, 458 S.W.3d at 512 (citing *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008)). Courts consider a wide variety of factors, including

- how long the party moving to compel arbitration waited to do so;

- the reasons for the movant's delay;

- whether and when the movant knew of the arbitration agreement during the period of delay;

- how much discovery the movant conducted before moving to compel arbitration, and whether that discovery related to the merits;

- whether the movant requested the court to dispose of claims on the merits;

- whether the movant asserted affirmative claims for relief in court;

- the extent of the movant's engagement in pretrial matters related to the merits (as opposed to matters related to arbitrability or jurisdiction);

- the amount of time and expense the parties have committed to the litigation;

14

- whether the discovery conducted would be unavailable or useful in arbitration;

- whether activity in court would be duplicated in arbitration; and

- when the case was to be tried.

*Id.*

While Pennington first initiated this lawsuit on April 18, 2018, the motion to compel arbitration was not filed until August 20, 2020. At the time of the August 28, 2020 hearing, trial was set for November 16, 2020. In addition, the following had occurred:

- On December 10, 2018, Pennington filed its "Plaintiff's Motion to Compel Entry Upon Property," which included a request for core testing.

- In response to "Defendants' Verified Summary Motion to Remove Leland Pennington, Inc.'s Invalid and Unenforceable Lien," Pennington filed its response on September 17, 2019.

- Pennington filed its motion for continuance on October 22, 2019, wherein it sought a continuance of the November 4, 2019 trial setting and noted that it would need to have a hearing "on the testing issue" because it had hired an expert to establish that testing may be done without damage to the vapor barrier.

- On November 13, 2019, Pennington filed its "Plaintiff's Second Motion to Compel Entry Upon Property" and attached a letter from its "concrete expert" outlining "the procedures use[d] to obtain the requested core sample, the definitiveness of such a sample on the critical issue in this litigation, and the lack of any effect, at all, on the foundation."

- On February 25, 2020, Pennington filed its "Plaintiff's Traditional and No-Evidence Motion for Partial Summary Judgment Against Defendants" in which it sought summary judgment against Appellees "pursuant to Chapter 53 of the Texas Property Code including perfection of its lien claim against the property"

15

and against KLR "concerning the existence of a contract and the actual agreed contract price for the work performed by [Pennington]."

- Appellees responded to the motion for summary judgment on April 13, 2020.

- On June 1, 2020, Pennington filed its second amended petition and notice of nonsuit of KLR.

- On July 31, 2020, Pennington filed its "Plaintiff's Second Traditional Motion for Partial Summary Judgment Against Defendants" in which it argued that it was entitled to summary judgment "with respect to one of the elements [workmanship] of its claims against [Appellees] that also pertains to the causation element of various causes of action asserted by [Appellees] against [Pennington]."

- Also on July 31, 2020, Pennington filed its "Plaintiff's Motion to Strike or, in the Alternative, Leave to Designate Rebuttal Expert" wherein it requested "an order striking any claim for diminished value to [Appellees'] home, or in the alternative, leave of Court to designate a rebuttal expert."

- On August 21, 2020, Appellees filed their response, which consisted of 175 pages, to Pennington's no-evidence and traditional motion for summary judgment concerning counterclaims.

- By the time the motion to compel arbitration was filed, Pennington's attorney had participated in the depositions of Reggie Reynolds (taken on June 29, 2020), Leland Pennington (taken on July 22, 2020), Rolando Trevino (taken on July 22, 2020), Glenn Kennedy (taken on July 28, 2020), Casey Weaver (taken on July 29, 2020), and Brandon Bulls (taken on July 29, 2020).[5]

A party can substantially invoke the judicial process when it participates in full discovery, files motions going to the merits, and waits until the eve of trial to seek arbitration. *Garg v. Pham*, 485 S.W.3d 91, 107 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 693 (Tex. 2008)).

---

[5]According to Appellees, Pennington noticed two of these depositions.

16

In deciding whether Pennington substantially invoked the litigation process, it is notable that most of Pennington's actions were not defensive in nature. *See G.T. Leach Builders*, 458 S.W.3d at 513–14 (declining to find substantial invocation of the judicial process and waiver where actions taken by party moving for arbitration were defensive in nature). Rather than merely defending itself and minimizing its litigation expenses, Pennington took advantage of the judicial forum by seeking affirmative relief on the merits by filing multiple motions for summary judgment as well as other claims for affirmative relief. *Richmont Holdings, Inc. v. Superior Recharge Systems, L.L.C.*, 455 S.W.3d 573, 576 (Tex. 2014) (holding that arbitration movant had not substantially invoked the judicial process where its motion did not "address the merits of the case"). Appellees were required to file responses to Pennington's motions for summary judgment. And destructive testing to Appellees' foundation occurred.[6] Moreover, a dispositive order regarding Pennington's claims was entered on the same day as Pennington filed its notice of appeal of the order denying arbitration. Considering the totality of the circumstances,[7] we hold that Pennington substantially invoked the litigation process in contravention to any right it may have had to

---

[6]In its reply to Appellees' response to its motion to compel arbitration, Pennington states, "Given the allegations concerning the strength of the concrete, it is axiomatic that the testing needed to take place and would almost certainly [have] been ordered by an arbitrator . . . ."

[7]Although Pennington bases its right to arbitration on the assignment of claims from KLR, we have not addressed, but arguably should also consider, KLR's conduct that amounts to waiver of the right to arbitration.

arbitration. *See Perry Homes*, 258 S.W.3d at 589–90 (adopting totality-of-the-circumstances test).

The substantial invocation of the litigation process must also have prejudiced the opposing party. *Kenney Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 545 (Tex. 2014). To establish prejudice, the party asserting waiver must show he will suffer inherent unfairness in terms of delay, expense, or damage to his legal position resulting from his opponent forcing him to litigate an issue and later seeking to arbitrate that same issue. *Id.*

> The two key critical factors in determining whether a party was prejudiced by the opposing party's delay in asserting arbitration are: (1) the expenses incurred by the party during the period of delay; and (2) the effect on the parties' legal positions, including whether the party moving for arbitration would gain an unfair advantage by switching forums from litigation to arbitration.

*Hogg v. Lynch, Chappell & Alsup, PC*, 480 S.W.3d 767, 792 (Tex. App.—El Paso 2015, no pet.) (citing *Perry Homes*, 258 S.W.3d at 597).

Appellees point out that they were prejudiced because, "[o]n the very eve of the case being decided, whether by dispositive motion or trial, [Pennington] sought to start over again in arbitration." In their response to the motion to compel arbitration, Appellees stated that they had incurred over $70,000 in attorneys' fees and $6,000 in expenses from participating in litigation and preparing the case for trial. This is in a lawsuit that Pennington's second amended petition stated involved no more than $200,000 in monetary relief. In addition, Appellees note that they have "already

18

suffered destructive testing of their foundation and the costs of six depositions and extensive discovery, mediation, and motions practice."

While proof of prejudice is required to support a claim that a party waived arbitration, "proof establishing the precise extent of that prejudice is not." *Hogg*, 408 S.W.3d at 793 (quoting *Perry Homes*, 258 S.W.3d at 599–600). Detriment or prejudice refers to an "inherent unfairness caused by a 'party's attempt to have it both ways by switching between litigation and arbitration to its own advantage.'" *In re Citigroup Global Mkts., Inc.*, 258 S.W.3d 623, 625 (Tex. 2008) (per curiam) (quoting *Perry Homes*, 258 S.W.3d at 597). Based on the totality of the facts, we conclude that Pennington had substantially invoked the litigation process to the detriment of Appellees by the time it filed its motion to compel arbitration. Accordingly, Pennington's issues contending that the trial court erred in denying its motion to compel arbitration are overruled.

## IV. CONCLUSION

Having overruled Pennington's issues, we affirm the trial court's order denying arbitration.

/s/ Dana Womack

Dana Womack
Justice

Delivered: March 4, 2021