**Dismissed in Part, Reversed in Part, Remanded, and Memorandum Opinion filed December 17, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00203-CV

---

### BUILDING HOMES FOR HEROES, INC. AND TOTAL LENDER SERVICES, LLC, Appellants

### V.

### JUSTIN ELLIS, INDIVIDUALLY, STEPHANIE ELLIS, INDIVIDUALLY, AND BOTH AS NEXT FRIEND OF R.E., A MINOR, Appellees

---

**On Appeal from the 506th Judicial District Court
Waller County, Texas
Trial Court Cause No. 18-08-25073**

---

## M E M O R A N D U M   O P I N I O N

Appellants Building Homes for Heroes, Inc. ("BHH") and Total Lender Services, LLC ("TLS") appeal the trial court's denial of their joint motion to compel arbitration.

BHH agreed to donate a renovated home to appellee, Sergeant Justin Ellis, a wounded veteran, and the two signed an agreement that includes an arbitration

clause.  TLS performed the renovations under a separate contract with BHH, which also contains an arbitration clause.  After Sgt. Ellis moved into the home with his wife, Stephanie, and daughter, R.E., all three began developing various health problems.  They sued BHH, alleging claims for negligence and Texas Deceptive Trade Practices-Consumer Protection Act violations.  BHH filed a crossclaim against TLS.  BHH and TLS jointly moved to compel arbitration of all claims.  The trial court denied the motion.

In its first issue, BHH contends that the trial court erred in denying the motion to compel in part because Sgt. Ellis's claims against BHH fall within the scope of the arbitration agreement between them.  We agree and sustain BHH's first issue.

Separately, both BHH and TLS complain that the trial court should have ordered arbitration of all claims by the Ellises against TLS.  However, the Ellises did not assert any claims against TLS until after BHH and TLS moved to compel arbitration, and neither BHH nor TLS sought to compel arbitration of any claims other than BHH's crossclaim against TLS.  Because our appellate jurisdiction in this case can be predicated only on the denial of an application to compel arbitration, and because appellants did not file an application to arbitrate the Ellises' claims against TLS, we lack jurisdiction to consider BHH's second issue and TLS's only issue.  We dismiss the appeal as to those issues for want of jurisdiction.

Accordingly, we dismiss the appeal in part, reverse in part, and remand to the trial court.

## Factual Background

While an Army Ranger serving in Iraq in 2007, Sgt. Ellis suffered injuries requiring amputation of his right leg.  He later retired from the military for medical reasons.  In October 2015, BHH, a national non-profit organization with a mission

to build or modify homes and gift them mortgage-free to veterans and their families, selected Sgt. Ellis and his family to receive a newly renovated home in Hempstead, Texas. In exchange, Sgt. Ellis agreed to maintain the home and devote some time to promoting BHH and its activities.

Before Sgt. Ellis and BHH signed an agreement, BHH hired TLS to perform the renovation work (the "BHH/TLS Contract"). BHH and TLS signed their contract on August 4, 2016. In that contract, TLS promised to complete certain work on the home, and BHH promised to pay $86,338.46 upon completion. The contract does not mention the Ellises, and they did not sign it. The contract contains an arbitration clause, providing:

> Arbitration. Any controversies arising out of the terms of this Agreement or its interpretation shall be settled in Harris County Texas in accordance with the rules of the American Arbitration Association, and the judgment upon award may be entered in any court having jurisdiction thereof.

The Ellises allege that, with BHH's consent, the family conducted a walkthrough of the home in September 2016 while repairs were ongoing. They expressed concern about the progress and quality of the renovations, and Sgt. Ellis commissioned a third-party inspection. This inspection discovered numerous defects in the home, including the presence of mold. Sgt. Ellis and Stephanie expressed their concerns to BHH representatives. According to the Ellises, BHH assured them that "every defect on the inspection report would be corrected."

When the renovations were complete, BHH and Sgt. Ellis signed in October 2016 a contract to transfer the property (the "Ellis/BHH Contract"). That contract contains an arbitration provision:

> **DISPUTE RESOLUTION AND ATTORNEY FEES**. In the event of a dispute between the parties respecting this Agreement, the parties hereby agree to a waiver of a trial by jury and consent to arbitration

3

with the American Arbitration Association. Except as provided in this Agreement each party agrees that it will be responsible for its own attorneys' fees and costs related to this Agreement.

The Ellis/BHH Contract also contains other relevant provisions, including Sgt. Ellis's acknowledgement that he is acquiring the property "as is" and "with all faults." It contains a broad waiver provision by which Sgt. Ellis waived all warranties and "any and all claims of liability" against BHH and, inter alia, BHH's subcontractors, "whether arising in tort or contract, under any other statute, warranty or otherwise. . . ." This waiver provision provides, "[t]he only remedy of [Sgt. Ellis] in the event of a defect in the premises is to return the premises to BHH."

In addition to the contract's broad waiver terms, it also contains several disclosures, including one relating specifically to mold:

> **MOLD DISCLOSURE.** VETERAN IS HEREBY ADVISED THAT MOLD AND/OR MICROSCOPIC ORGANISMS MAY EXIST IN THE HOME ON THE PREMISES, AND MAY CAUSE PHYSICAL INJURIES, INCLUDING BUT NOT LIMITED TO ALLERGIC AND/OR RESPIRATORY REACTIONS OR OTHER PROBLEMS, PARTICULARLY WITH PERSONS WITH IMMUNE SYSTEM PROBLEMS, YOUNG CHILDREN AND THE ELDERLY. VETERAN ACKNOWLEDGES AND AGREES TO ACCEPT FULL RESPONSIBILITY AND RISK FOR ANY MATTERS THAT MAY RESULT, DIRECTLY OR INDIRECTLY FROM MICROSCOPIC ORGANISMS AND/OR MOLD THAT MAY EXIST IN THE HOME OR ON THE PREMISES AND HEREBY RELEASES AND HOLDS HARMLESS BHH AND ITS OFFICERS, EMPLOYEES, AGENTS, ADMINISTRATORS, ASSIGNS, OR SUCCESSORS FROM ANY LIABILITY, RECOURSE, DAMAGE OR CLAIM (FINANCIAL OR OTHERWISE) RESULTING THEREFROM. . . .

According to the Ellises' pleading, all family members developed health problems after moving into the house, and they commissioned a new inspection. This inspection revealed that the problems identified in the earlier inspection had been cosmetically repaired, but not remediated. The Ellises moved out, and BHH

4

again assured that it would "take care of everything." After further renovations, the family moved back in. A few weeks later, Sgt. Ellis developed a serious problem following a surgery in the area of his amputation, and his doctors told him he suffered from septic shock caused by mold exposure. The doctors refused to release him to move back into his home. The Ellises then vacated the home permanently.

## Procedural History

The Ellises sued BHH, claiming injuries and damages allegedly connected to defects in the home's renovation under theories of negligence and Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") violations.[1] The Ellises sought personal injury and property damages resulting from an alleged mold infestation and the purportedly failed or defective remediation efforts in the home. The Ellises sued only BHH. BHH filed a third-party petition against TLS as the party that performed the allegedly defective renovations.

BHH and TLS filed a joint "Plea in Abatement and Motion to Compel Arbitration" (the "Motion to Compel"), seeking to arbitrate the Ellises' claims against BHH. They contended that Sgt. Ellis was bound to the arbitration clause in the Ellis/BHH Contract because he signed it, and that Stephanie and R.E., as direct beneficiaries of the contract, likewise were required to arbitrate their claims. Additionally, BHH and TLS informed the court that they agreed to arbitrate BHH's third-party claims pursuant to the BHH/TLS Contract's arbitration clause. This is the only mention of the BHH/TLS Contract in the motion to compel.

Though the Ellises had not previously sued TLS, they amended their petition after the Motion to Compel was filed, to add TLS as a defendant. They alleged liability against TLS based on negligence and DTPA violations. The Ellises also

---

[1] *See* Tex. Bus. & Com. Code §§ 17.41-.63.

filed a response to the Motion to Compel. The Ellises urged the trial court to deny the motion because: (1) the Ellises' claims did not fall within the scope of the arbitration agreement contained in the Ellis/BHH Contract; (2) neither Stephanie nor R.E. were signatories to the Ellis/BHH Contract and thus could not be compelled to arbitration; and (3) the Ellises' claims against TLS were not subject to arbitration because they did not sign an arbitration agreement with TLS.

Because it is important to our jurisdictional analysis below, we emphasize that the Motion to Compel did not seek to arbitrate any claims by the Ellises against TLS, because those claims were not yet alleged when the motion was filed. After the Ellises first asserted claims against TLS, no party filed a motion to compel those claims to arbitration.

Following a hearing, the trial court denied the Motion to Compel. BHH and TLS now appeal.

## Analysis

### A. Standard of Review and Applicable Law

As a preliminary matter, the contracts at issue do not specify whether the Federal Arbitration Act ("FAA") or the Texas Arbitration Act ("TAA") governs this dispute, and the parties have taken no position. Because the relevant substantive principles are the same under either act, we rely on cases applying both statutes. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 n.10 (Tex. 2008); *Southwinds Express Constr., LLC v. D.H. Griffin of Tex., Inc.*, 513 S.W.3d 66, 71 n.2 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Denial of a motion to compel arbitration generally triggers the abuse-of-discretion standard. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex. 2006) (orig. proceeding). Under this standard, we defer to a trial court's factual

6

determinations if they are supported by evidence, but we review a trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *see D. Wilson Constr.*, 196 S.W.3d at 781 (existence of valid arbitration agreement is legal question). A trial court "has no 'discretion' in determining what the law is or applying the law to the facts." *D. Wilson Constr.*, 196 S.W.3d at 781. In evaluating a motion to compel arbitration, a court must determine first whether a valid arbitration agreement exists, and then whether the agreement encompasses the claims raised. *See Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (per curiam). Arbitration cannot be ordered in the absence of an agreement to arbitrate, and thus, despite strong presumptions favoring arbitration, the existence of a valid agreement to arbitrate is a settled, threshold requirement to compel arbitration. *Morgan v. Bronze Queen Mgmt. Co.*, 474 S.W.3d 701, 705 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Claims must be submitted to arbitration if "liability arises solely from the contract or must be determined by reference to it." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (orig. proceeding). If the facts alleged touch matters, have a significant relationship to, are inextricably enmeshed with, or are factually intertwined with the contract containing the arbitration agreement, the claim is arbitrable. *Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 108 (Tex. App.—Houston [14th Dist.] 2012, no pet.). On the other hand, a claim is not subject to arbitration if the facts alleged in support of the claim are completely independent of the contract and the claim could be maintained without reference to the contract. *See id.*

Bearing these standards in mind, we turn to BHH's first issue.

**B.      Sgt. Ellis must arbitrate his claims against BHH.**

In its first issue, BHH claims the trial court erred in denying the Motion to Compel because Sgt. Ellis's claims fall within the broad scope of the arbitration agreement contained in the Ellis/BHH Contract.  Sgt. Ellis does not dispute that a valid arbitration agreement exists with BHH.  Rather, he contends his negligence and DTPA claims against BHH fall outside the agreement's scope because they "arise[] independently of the contract."  We disagree.

The arbitration provision in the Ellis/BHH Contract requires arbitration of "disputes" "respecting this Agreement" between BHH and Sgt. Ellis.  The scope of an arbitration clause that includes all "disputes," and not just claims, is very broad and encompasses more than claims "based solely on rights originating exclusively from the contract."  *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *Premium Plastics Supply, Inc. v. Howell*, 537 S.W.3d 201, 206 (Tex. App.— Houston [1st Dist.] 2017, no pet.).

To determine whether a claim falls within an arbitration agreement's scope, we focus on the allegations of the complaint, rather than the legal causes of actions asserted.  *Henry*, 551 S.W.3d at 115.  Here, Sgt. Ellis seeks damages resulting from the presence of mold due to the home's alleged faulty and improper renovations and remediation.  The subject of the Ellis/BHH Contract was to donate a renovated home to the Ellises.  Thus, Sgt. Ellis's allegations against BHH describe a dispute "respecting" the Ellis/BHH Contract.

Moreover, BHH's liability must be determined by reference to the contract because its terms may form the basis of several defensive theories, such as waiver.  The Ellis/BHH Contract discloses potential mold issues and, in it, Sgt. Ellis "agreed[d] to accept full responsibility and risk for any matters that may result, directly or indirectly from microscopic organisms and/or mold that may exist in the

8

home or on the premises. . . ." Before he signed the contract, Sgt. Ellis was aware that inspectors had detected mold in the house, but he alleges he thought the mold was remediated based on BHH's pre-contract representations. The agreement also contains a broad waiver provision stating that Sgt. Ellis agrees to waive all negligence or statutory claims, which necessarily includes DTPA claims. For these reasons, BHH's liability for any mold contamination must be determined by reference to the agreement; or the facts alleged touch matters, have a significant relationship to, are inextricably enmeshed with, or are factually intertwined with the contract containing the arbitration agreement. Thus, Sgt. Ellis's claims against BHH must be arbitrated. *See Weekley Homes*, 180 S.W.3d at 132 (explaining that claims must be arbitrated if liability "arises solely from the contract or must be determined by reference to it"); *Cotton Commercial*, 387 S.W.3d at 108; *cf. also TMI, Inc. v. Brooks*, 225 S.W.3d 783, 789, 791 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (homeowners' negligence, fraud, DTPA, nuisance, and conspiracy claims subject to arbitration provision contained in purchase agreements they signed with homebuilder).

In another argument, Sgt. Ellis points out that part of the waiver provision contains an incomplete sentence, and that he did not initial the waiver despite a specifically designated blank for him to do so. These facts render the waiver provision "materially defective," according to Sgt. Ellis. He urges that the parties did not form a "valid agreement regarding toxic exposure claims." His arguments, however, concern the enforceability of a particular provision, rather than the validity of the contract as a whole. Sgt. Ellis signed the contract, and he challenges neither the agreement itself nor the arbitration provision as improperly formed or invalid. *See, e.g., RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 124-25 (Tex. 2018) (explaining that challenges to a contract's existence or to an arbitration clause's

9

validity are "threshold issues to be decided by the court"). Thus, Sgt. Ellis's arguments raise matters for the arbitrator to decide, not the court. *See id.*

Under these circumstances, we conclude that Sgt. Ellis's claims against BHH are subject to the Ellis/BHH Contract's arbitration provision, and we sustain BHH's first issue. The trial court erred in refusing to order Sgt. Ellis to arbitrate his claims against BHH.

On appeal, BHH does not challenge the trial court's order with respect to Stephanie's or R.E.'s claims against BHH. Thus, we are not called upon to consider whether, as non-signatories to the Ellis/BHH Contract, Stephanie or R.E. are bound by the contract under the doctrine of direct benefits estoppel. We hold only that BHH established a valid arbitration agreement with Sgt. Ellis and that his claims against BHH fall within the scope of the agreement.

## C. We lack jurisdiction over whether the Ellises must arbitrate their claims against TLS.

In BHH's second issue, and in TLS's sole issue, they contend that the Ellises' claims against TLS must be arbitrated based on the arbitration clause in the BHH/TLS Contract. Acknowledging the Ellises are not signatories to that agreement, they insist arbitration is required under the direct benefits estoppel doctrine because the Ellises accepted the benefits of TLS's renovation work and lived in the house. Under this doctrine, "a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding); *Cooper Indus. LLC v. Pepsi-Cola Metro. Bottling Co.*, 475 S.W.3d 436, 442 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Even when not raised by any party, we are obliged to examine our appellate jurisdiction independently. *See Atlas Gulf-Coast, Inc. v. Stanford*, 299 S.W.3d 356, 358 (Tex. App.—Houston [14th Dist.] 2009, no pet.). If we conclude we have no jurisdiction, we must dismiss the appeal. *Id.* Because statutes allowing interlocutory appeals derogate the general rule that only final judgments are appealable, we must strictly construe such statutes. *See Stary v. DeBord*, 967 S.W.2d 352, 352-53 (Tex. 1998); *Atlas Gulf-Coast*, 299 S.W.3d at 359. We have jurisdiction to review interlocutory orders only if a statute explicitly provides. *Atlas Gulf-Coast*, 299 S.W.3d at 359.

The TAA provides, in relevant part, that:

[a] party may appeal a judgment or decree entered under this chapter or an order:

(1) denying an application to compel arbitration made under Section 171.021[.]

Tex. Civ. Prac. & Rem. Code § 171.098(a)(1).

Section 171.098(a)(1) permits an interlocutory appeal from an order denying an application to compel arbitration. For jurisdictional purposes, and as our court stated in *Atlas Gulf-Coast*, this section requires, at a minimum, that the appellant first file an application to compel arbitration. *Atlas Gulf-Coast*, 299 S.W.3d at 359. Similarly, section 51.016 allows for state court appeals in agreements governed by the FAA. Tex. Civ. Prac. & Rem. Code § 51.016. Pertinent to this case, a party may appeal (1) an order refusing to stay litigation pending arbitration of its subject matter, (2) denial of a petition to order arbitration, and (3) an order denying an application to compel arbitration. *Id.* (incorporating grounds set forth in 9 U.S.C. § 16).

No party filed a motion to compel the Ellises' claims against TLS to arbitration. We do not construe the trial court's order as having denied an application

11

to compel arbitration that was never filed. Thus, we lack interlocutory appellate jurisdiction under either section 171.098(a)(1) or section 51.016. *Academy, Ltd. v. Miller*, 405 S.W.3d 152, 154 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding); *Atlas Gulf-Coast*, 299 S.W.3d at 359. There must be an order denying a motion to compel arbitration before an interlocutory appeal is permitted, and it is insufficient for an order to merely have the effect of denying arbitration. *Ground Force Constr., LLC v. Coastline Homes, LLC*, No. 14-13-00649-CV, 2014 WL 2158160, at *2 (Tex. App.—Houston [14th Dist.] May 22, 2014, no pet.) (mem. op.).

## Conclusion

The trial court abused its discretion in denying the Motion to Compel as it relates to Sgt. Ellis's claims against BHH. Because BHH has not challenged the denial of the motion concerning Stephanie's or R.E.'s claims against BHH, we leave the court's ruling as to those claims undisturbed. Finally, we dismiss for want of jurisdiction TLS's appeal and the portion of BHH's appeal challenging the denial of the Motion to Compel Arbitration of the Ellises' claims against TLS. We remand to the trial court for further proceedings consistent with this opinion.


/s/     Kevin Jewell
Justice


Panel consists of Justices Christopher, Jewell, and Zimmerer.