**Affirmed and Memorandum Opinion filed March 30, 2021.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-19-00247-CV

_____

**LEFT GATE PROPERTY HOLDING, LLC D/B/A TEXAS DIRECT AUTO,**
**Appellant**

**V.**

**DANYEL NELSON, Appellee**

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-79084**

## MEMORANDUM OPINION

In this interlocutory appeal, appellant Left Gate Property Holding, LLC d/b/a Texas Direct Auto ("Direct Auto") challenges the trial court's order denying its First Amended Motion to Compel Arbitration.[1] For the reasons set forth below, we affirm.

_____

[1] *See* Tex. Civ. Prac. & Rem. Code § 51.06; *Cotton Comm'l USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 397 S.W.3d 99, 103 n.3 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("The

## I. BACKGROUND

### A. FACTUAL BACKGROUND

Direct Auto is a retailer of used cars in Houston, Texas. On August 1, 2017, Danyel Nelson ("Nelson") signed a buyer's purchase order for a 2016 Nissan Maxima from Direct Auto. The buyer's purchase order shows that the car was sold by Christopher Williams; the delivery date of the vehicle as August 1, 2017, at 4:00 p.m.; and a balance due of $22,405.68. It also contains a "Disclaimer of Warranties" and includes the language "THIS ORDER IS NOT BINDING UNTIL ACCEPTED BY THE SELLER." Nelson signed the document as "purchaser," but the space beside the word "accepted" is blank. On that same day, Nelson and a representative of Direct Auto signed an "Odometer Disclosure Statement," in which Direct Auto certified the odometer reading as correct.

In mid-August 2017, Nelson secured her own financing for the car with Inova Federal Credit Union ("Inova"). On August 15, 2017, Nelson signed a "Loan and Security Agreements and Disclosure Statement," indicating monthly payments would begin two months later. On August 24, 2017, Inova issued a cashier's check in the amount of $22,405.68, which was made payable to Direct Auto. Nelson alleges that she received a paper license plate and registration papers from Direct Auto immediately thereafter. The cashier's check was delivered to Direct Auto on August 31, 2017.[2]

---

Texas Civil Practice and Remedies Code now provides for the interlocutory appeal of a trial court's denial of a motion to compel arbitration under the FAA [Federal Arbitration Act].").

[2] The cashier's check cleared the Inova Federal Credit Union account on September 14, 2017.

Nelson alleges that she called Direct Auto to inquire about the status of her permanent license plates at which time, according to Nelson, Direct Auto informed her that it had misplaced her paperwork and Direct Auto would have to recreate it.

On September 13, 2017, Nelson alleges that Direct Auto instructed her to sign the buyer's purchase order again with all the other necessary paperwork. On September 13, 2017, Nelson signed an "Application for Texas Title," a "Dealer's Reassignment of Title for a Motor Vehicle," and a "Texas Direct Auto CPO Limited Warranty." Lynn Waddell signed these documents on behalf of Direct Auto. Inova placed a lien on the vehicle on September 13, 2017.

After waiting again and not receiving her permanent license plates, Nelson called Direct Auto again regarding their status. According to Nelson, Direct Auto instructed her to come back and fill out all of the paperwork again in December 2017.

Nelson alleges that she subsequently came to learn that Direct Auto sold her a car that did not have a "clean title," but a salvaged and "dirty title." Nelson alleges that a Carfax vehicle report revealed that the car Direct Auto sold her was declared a total loss on August 27, 2017, due to flood damage. Additionally, Nelson alleged the car was reported as stolen. The car was not reported with a new owner until December 27, 2017.

**B.    PROCEDURAL HISTORY**

In October 2018, Nelson brought this suit against Direct Auto, asserting the following causes of action: negligence; gross negligence; negligent misrepresentation; negligent hiring, supervision, and/or management; fraud, breach of contract; and violations of Texas Deceptive Trade Practice Act. Nelson seeks a variety of damages as well as pre- and post-judgment interest, attorney's fees, and

3

costs. Subject to arbitration, Direct Auto asserted a general denial, affirmative defenses, and special exceptions.

On February 25, 2019, Direct Auto filed its First Amended Motion to Compel Arbitration, asserting that on December 19, 2017, Nelson and Direct Auto signed an "Arbitration Agreement" and that this dispute falls within the scope of the arbitration agreement.[3] In her response, Nelson maintained she purchased a car from Direct Auto in August 2017, and not in December 2017. Nelson also argued that no arbitration agreement exists and that the purported "Arbitration Agreement" filed by Direct Auto did not contain her signature.[4] In a supplemental brief in support of its motion, Direct Auto argued the sale of the automobile was not complete in August 2017; instead, Direct Auto asserted that on December 19, 2017, both parties executed all documents necessary to finalize the sale, including an arbitration agreement.

Without holding an evidentiary hearing,[5] the trial court denied Direct Auto relief (*i.e.*, its amended motion to compel arbitration) on March 8, 2019.[6] This appeal timely followed.

---

[3] Direct Auto contends it filed an amended motion to compel because its original motion did not include a certificate of conference.

[4] Although Nelson attached an affidavit, she did not verify under oath that the signature on the Arbitration Agreement is not hers and/or genuine.

[5] It is undisputed by the parties in their briefs that the trial court held a hearing on March 4, 2019. However, the record before us does not contain a notice of hearing and there is no entry in the trial court's docket sheet of a notice of hearing being filed. Further, there is no reporter's record.

[6] The trial court's order provided: "After considering Plaintiffs (sic) Response to Defendants (sic) Motion to Compel Arbitration (sic) the pleading, the affidavits, and arguments of counsel, the court **GRANTS** Plaintiffs (sic) Motion and denies Defendants (sic) relief sought."

## II. ANALYSIS

In a single issue, Direct Auto challenges the trial court's denial of its amended motion to compel arbitration:

> The trial court erred by denying arbitration because Nelson and Texas Direct Auto agreed to submit disputes to arbitration and the claims asserted against [Texas Direct Auto] are within the scope of the arbitration agreement.

### A. STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's ruling on a motion to compel arbitration under an abuse of discretion standard. *See Henry v. Cash Biz, L.P.*, 551 S.W.3d 111, 115 (Tex.), *cert. denied*, —— U.S. ——, 139 S. Ct. 184, 202 L. Ed. 2d 40 (2018); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009); *Building Homes for Heroes, Inc. v. Ellis*, No. 14-19-00203-CV, 2020 WL 7394017, at *3 (Tex. App.— Houston [14th Dist.] Dec. 17, 2020, no pet. h.) (mem. op.); *Nationwide Coin & Bullion Reserve, Inc.. v. Thomas*, No. 14-19-00632-CV, —— S.W.3d ——, 2020 WL 6741694, at *2 (Tex. App.—Houston [14th Dist.] Nov. 17, 2020, no pet. h.). Under this standard, we defer to a trial court's factual findings when they are supported by evidence, but we review de novo the trial court's legal determinations. *See Labatt Food Serv.*, 279 S.W.3d at 642–43; *see also In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding) (existence of a valid arbitration agreement is a legal question).

A trial court "has no discretion in determining what the law is or applying the law to the facts." *D. Wilson Constr.*, 196 S.W.3d at 781 (internal citations omitted). In evaluating a motion to compel arbitration, a court must determine first whether a valid arbitration agreement exists, and then whether the agreement encompasses the claims raised. *See Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013). Arbitration cannot be ordered in the absence of an agreement to arbitrate,

5

and thus, despite strong presumptions favoring arbitration, the existence of a valid agreement to arbitrate is a settled, threshold requirement to compel arbitration. *Morgan v. Bronze Queen Mgmt. Co.*, 474 S.W.3d 701, 705 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *accord In re Estate of Guerrero*, 465 S.W.3d 693, 699 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("[D]espite strong presumptions that favor arbitration, a valid agreement to arbitrate is a settled, threshold requirement to compel arbitration.").

"A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement." *See Henry*, 551 S.W.3d at 115. Motions to compel arbitration are ordinarily decided in summary proceedings "on the basis of affidavits, pleadings, discovery, and stipulations." *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992); *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 897 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding); *see also* Tex. Civ. Prac. & Rem. Code § 171.021(b) ("If a party opposing an application made under Subsection (a) denies the existence of the agreement, the court shall summarily determine that issue."). In such summary proceedings, the movant must present proof that an agreement to arbitrate requires arbitration of the dispute. *See In re Jebbia*, 26 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding); *see also In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (per curiam) (orig. proceeding) (party seeking to compel arbitration bears the burden to establish that an arbitration agreement exists), *abrogated on other grounds*, *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002) (orig. proceeding).

The party resisting arbitration must raise an issue of material fact about a necessary element the movant was required to prove, or present some evidence supporting every element of a defensive claim that there is no enforceable

agreement to arbitrate. *See In re Jebbia*, 26 S.W.3d at 757. If there is conflicting evidence as to the material facts necessary to determine the issue, the trial court is to conduct an evidentiary hearing to resolve the dispute. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 354 (Tex. 2008) (orig. proceeding); *Tipps*, 842 S.W.2d at 269.

When, as here, no findings of fact or conclusions of law are requested or filed, the trial court is presumed to have made all necessary findings of fact to support its ruling. *In re Estate of Guerrero*, 465 S.W.3d at 701. Similarly, because the trial court did not state a basis for its ruling in the order denying the motion to compel arbitration, we must uphold the trial court's ruling on any legal theory supported by the evidence. *Id*.

**B.     EXISTENCE OF AN ENFORCEABLE ARBITRATION AGREEMENT**

As set forth above, Direct Auto, as the movant, bore the burden of establishing that the December 19, 2017 arbitration agreement is a valid agreement that binds Nelson. *See Henry*, 551 S.W.3d at 115; *In re Jim Walter Homes, Inc.*, 207 S.W.3d at 897. Whether there is a valid agreement to arbitrate is determined with reference to ordinary principles of state contract law. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005). The elements needed to form a valid and binding contract are (1) an offer; (2) acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) consent by both parties; (5) execution and delivery; and (6) consideration. *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Accordingly, the first analytical step requires the party moving to compel arbitration "must show the agreement meets all requisite contract elements." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003).

7

### 1. AUTOMOBILE-SALE TRANSACTION COMPLETION DATE

Direct Auto argues that the trial court abused its discretion in denying its amended motion to compel arbitration because on December 19, 2017, Nelson and a representative of Direct Auto signed an "Arbitration Agreement," providing for arbitration under the Federal Arbitration Act[7] of "any claim, dispute or controversy . . . that either party has arising from Customer(s)/Dealership Dealings." Direct Auto claims that, in addition to the arbitration agreement, on December 19, 2017, the parties executed other documents finalizing the transaction, including a buyer's purchase order; an Odometer Disclosure Statement; a Waiver Manufacturer Recall; and a receipt for title. Direct Auto asserts that the parties executed multiple instruments on multiple dates to complete a single automobile-sale transaction in December 2017. Direct Auto maintains that the transaction culminated on December 19, 2017, when both parties executed all documents necessary to finalize the automobile sale.

In her sworn affidavit, Nelson maintains that she did not purchase a vehicle in December 2017. Nelson contends that she purchased the vehicle and Direct Auto received payment before December 2017. According to Nelson, no arbitration agreement was presented or signed during that time. Nelson argues that she purchased the vehicle in August 2017, as evidenced by the buyer's purchase order and the Odometer Disclosure Statement. Nelson secured her own financing on August 15, 2017, from Inova, with a cashier's check payable to Direct Auto in the amount of $22,405.68 on August 24, 2017. Nelson contends that on August 31, 2017, Direct Auto received the cashier's check. Nelson asserts that Inova placed a lien on the vehicle on September 13, 2017, as shown on the Texas Certificate of Title. The cashier's check cleared the Inova account on September

---

[7] *See* 9 U.S.C.A. § 1 *et seq.*

14, 2017. Thus, according to Nelson, she purchased the vehicle prior to December 2017.

It is undisputed that the trial court has broad discretion to construe multiple documents together. The Texas Supreme Court has held that it is "well-established" that:

> . . . instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other, and that a court may determine, as a matter of law, that multiple documents comprise a written contract. In appropriate instances, courts may construe all the documents as if they were part of a single, unified instrument.

*Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000); *see City of Houston v. Clear Channel Outdoor, Inc.*, 233 S.W.3d 441, 445 (Tex. App.—Houston [14th Dist.] 2007, no pet.). This rule, however, is "simply a device for ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily." *DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999) (citing *Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62, 65 (1959)). The Court must ascertain the true intentions of the parties as expressed in the written instruments. *Webster*, 128 S.W.3d at 229.

Direct Auto makes several arguments in support of its contention that the automobile-sale transaction was not finalized until December 2017. We address each in turn. First, Direct Auto asserts that unlike the buyer's purchase order dated December 19, 2017, the August 1, 2017 buyer's purchase order was only signed by Nelson and not by any dealer representative. Direct Auto contends that the document expressly states under disclaimer of warranties that "THIS ORDER IS NOT BINDING UNTIL ACCEPTED BY DEALER." Despite this language, the August 1, 2017, buyer's purchase order lists the "delivery date" as "08/01/2017

9

04:00:00 PM"; however, the delivery date on the buyer's purchase order dated December 19, 2017, is blank. Additionally, a representative of Direct Auto, "Tanyas Foster," signed as transferor, and Nelson signed as transferee, the Odometer Disclosure Statement dated August 1, 2017, representing the odometer reading as 28,849 miles. Over four months later, after having taken possession of the vehicle, the December 1, 2017, Odometer Disclosure Statement continued to list the mileage at 28,849. Moreover, the August 1, 2017 buyer's purchase order shows a balance due of $22,405.68; the December 19, 2017, buyer's purchase order shows the balance due as zero.

Next, Direct Auto maintains the vehicle sale was not completed in August because of pending title issues and the lack of a bailment agreement. Direct Auto, however, does not dispute that Nelson secured private financing from Inova on August 15, 2017, that Inova cut a cashier's check in the amount of $22,405.68 payable to Direct Auto on August 24, 2017, and that Direct Auto received the cashier's check as payment in full on August 31, 2017. Additionally, Direct Auto and Nelson signed the application for Texas Title and Dealership's Reassignment of Title for a Motor Vehicle, a Texas Direct Auto Certified Pre-Owned ("CPO") Limited Warranty, and a Title Application Receipt, all having an effective date of September 13, 2017. Also, on September 13, 2017, Inova placed a lien on the vehicle. There is no dispute that the check to Direct Auto cleared the Inova account on September 14, 2017. Further, it is undisputed that prior to December 2017, Nelson had possession of the car. And, according to her loan paperwork with Inova, Nelson's first monthly payment was due "10/15/2017."

To the extent Direct Auto contends that arbitration provisions need not be supported by independent consideration as long as the underlying contract is supported by consideration, this argument is unavailing. The trial court could have

10

found that the automobile sale transaction was completed prior to December 2017. Thus, the court could have determined that documents executed in December 2017 were not part of a single, unified instrument.

Based on the record before us, even construing multiple documents together, the trial court could have found that Nelson's vehicle was purchased and paid for before December 2017, there were no additional documents required to "finalize" the automobile sale transaction, and therefore, Direct Auto failed to prove the elements necessary to establish the existence of a valid contract in December 2017.

## 2.    TEXAS CERTIFICATE OF TITLE ACT

Direct Auto argues that the sale of the vehicle was completed in December under the Texas Certificate of Title Act.  *See* Tex. Transp. Code §§ 501.001, *et seq*. Direct Auto maintains that title to the vehicle did not pass from Direct Auto to Nelson until, at the earliest, December 19, 2017, because that is the date Direct Auto submitted the Application for Texas Title to Fort Bend County.

As an initial matter, we have not located, and Direct Auto has not pointed us to, any place in the record before us where Direct Auto raised its contention to the trial court that the sale of the vehicle was completed in December 2017 under the Texas Certificate of Title Act.  To preserve a complaint for review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if it is not apparent from the context of the request, objection, or motion.  *See* Tex. R. App. P. 33.1(a)(1).  When a party fails to do so, error is not preserved, and the complaint is waived.  *See Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991).

Even absent Direct Auto's failure to raise its contentions in the trial court under the Texas Certificate of Title Act, the trial court did not abuse its discretion

11

in denying Direct Auto's amended motion for arbitration based upon the Texas Certificate of Title Act. The Act provides that a sale made in violation of this provision is void and title does not pass until the requirements of the chapter are met. *See* Transp. Code Ann. § 501.073. Direct Auto does not contend that Nelson's title is void under the Act. In fact, Direct Auto concedes that when it executed a Dealer's Reassignment of Title for a Motor Vehicle on September 13, 2017, "equitable title" passed to Nelson. Instead, without citation to authority, Direct Auto argues the sale was not finalized until December 2017 when Direct Auto submitted the Application for Texas Title to Fort Bend County. Direct Auto's argument conflicts with our prior interpretation of the Act:

> The legislative intent of the Certificate of Title Act was to lessen and prevent theft of motor vehicles, traffic in stolen vehicles, and sale of encumbered vehicles without disclosure of existing liens, not to prevent sales and transfers of interest in motor vehicles. Non-compliance with the act does not override the clear showing of a valid and complete transfer of ownership of an automobile. Even in the face of non-compliance, **the sale of a vehicle without the transfer of a title certificate is valid as between the parties**, when the purposes of the Certificate of Title Act are not defeated, although the Act declares that the non-transfer of such certificates renders the sale void.

*Gramercy Ins. Co. v. Arcadia Fin. Ltd.,* 32 S.W.3d 402, 408 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (internal citations and quotations omitted) (emphasis added). Additionally, the transfer of title receipt relied on by Direct Auto shows the vehicle sale occurring on September 13, 2017. As such, Direct Auto's reliance on the Act to demonstrate when the sale was complete is misplaced. The trial court could have found that the sale of the vehicle without the transfer of title was valid prior to December 2017.

12

### 3. SWORN PLEA AND ESTOPPEL

Next, Direct Auto argues that Nelson did not specifically deny signing the arbitration agreement.[8] Direct Auto argues that Nelson's affidavit only generally averred that all facts stated in the Response were within her personal knowledge and were true and correct. In her affidavit, Nelson was clear that she did not enter into any contract with Direct Auto in December 2017. Nelson attested she executed a valid and enforceable written contract in August 2017, not December 2017. Additionally, she swore that she did not purchase a vehicle from Direct Auto in December 2017.

Direct Auto further maintains even if the trial court believed that Nelson was a non-signatory to the Arbitration Agreement, Nelson is estopped from bringing a breach of contract action on the written contract to purchase the vehicle while denying she signed the arbitration agreement. Direct Auto's argument is inapplicable. As set forth above, the trial court could have found based on the evidence submitted that the automobile-sale transaction was completed before December 2017. Moreover, review of the last paragraph of the one-page portion of the arbitration agreement relied upon by Direct Auto demonstrates its inapplicability to this transaction as it references that the arbitration agreement is "entered into contemporaneously with you (sic) Retail Installment Sale Contract or Lease Contract as applicable (such Retail Installment Sale Contract or Lease Contract hereinafter to as the "Contract")." There is nothing in the record before us concerning a Retail Installment Sale Contract or Lease Contract. Instead, the record demonstrates Nelson secured private financing for the vehicle with Inova.

---

[8] To the extent Direct Auto cites Texas Rule of Civil Procedure 93(7) and argues that "in the absence of such a sworn plea, the instrument shall be received in evidence as fully proved," we need not reach this issue or whether that question was preserved for review.

Based on the record before us, we cannot conclude that the trial court abused its discretion in denying the motion to compel arbitration. Because there is evidence that the sale of the car was completed prior to December 2017, the trial court could have decided the issue summarily, without holding an evidentiary hearing,[9] concluding that no valid arbitration agreement existed between the parties.[10] Accordingly, we overrule Direct Auto's issue on appeal.

### III. CONCLUSION

We affirm the trial court's order denying Direct Auto's motion to compel arbitration.

/s/    Margaret "Meg" Poissant
Justice

Panel consists of Justices Bourliot, Hassan, and Poissant.

---

[9] Direct Auto does not argue the trial court erred by not holding an evidentiary hearing.

[10] In light of this determination, we need not address whether Nelson's claims are within the scope of the arbitration agreement.

14